1  **DYKEMA GOSSETT LLP**
   S. Christopher Winter (SBN: 190474)
2  *kwinter@dykema.com*
   Vivian S. Lee (SBN: 273274)
3  *vlee@dykema.com*
   333 South Grand Avenue, Suite 2100
4  Los Angeles, CA  90071
   Telephone:   (213) 457-1800
5  Facsimile:    (213) 457-1850

6  Attorneys for Defendants
   JOHN VARVATOS ENTERPRISES, INC.
7  JOHN VARVATOS
   BLOOMINGDALE'S, INC.

8

9                **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                    **OAKLAND DIVISION**

12 | JIM MARSHALL PHOTOGRAPHY, LLC, a | Case No. 4:11-cv-06702-DMR |
   California limited liability company,

13 |  | [Assigned for all purposes to the Hon. Donna M. Ryu] |
              Plaintiff,

14

15     vs.                                   **NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION BY DEFENDANTS JOHN VARVATOS**

16 JOHN VARVATOS ENTERPRISES, INC., a    **ENTERPRISES, INC., JOHN VARVATOS,**
   Delaware Corporation; JOHN VARVATOS, an   **AND BLOOMINGDALES, INC.;**
   individual; BLOOMINGDALE'S, INC., a   **MEMORANDUM OF POINTS AND**
17 Delaware corporation,                      **AUTHORITIES**

18           Defendants.                      [Joint Statement of Undisputed Facts,
                                              Declaration S. Christopher Winter, Defendants'
19                                            Request for Judicial Notice, and Notice of
                                              Lodging filed concurrently herewith]
20

21

22 AND RELATED COUNTERCLAIMS           Date:        May 9, 2013
                                        Time:        1:30 p.m.
                                        Courtroom:   4, 3rd Floor
23

24                                      Complaint Filed:      12/29/2011
                                        Trial Date:           7/8/2013
25

26

27

28

*DYKEMA GOSSETT LLP*
*333 SOUTH GRAND AVENUE, SUITE 2100*
*LOS ANGELES, CALIFORNIA 90071*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 9, 2013, at 1:30 p.m., in Courtroom 4, or as soon thereafter as the parties may be heard, Defendants John Varvatos Enterprises, Inc. ("JVE"), John Varvatos ("Varvatos"), and Bloomingdale's, Inc. ("Bloomingdale's"), (collectively, "Defendants"), will and hereby do move this Court at the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California, 94612, for summary adjudication of issues and dismissal of claims pursuant to Federal Rule of Civil Procedure 56 in favor of Defendants JVE, Varvatos, and Bloomingdale's.

This motion is made on the following grounds:

1)      Plaintiff Jim Marshall Photography, LLC ("Plaintiff") is not the registered owner of record of the copyrights in those five (5) images identified in paragraph 7 of the Third Amended Complaint ("TAC") as (d), (j), (v), (ll), and (mm).  Plaintiff has neither alleged nor produced evidence that it is the beneficial owner of these copyrights.  As such, Plaintiff cannot establish ownership of valid copyrights in those images, an essential element of a copyright infringement claim, and judgment should be entered in favor of Defendants on those claims;

2)      Plaintiff cannot produce evidence sufficient to establish that it is the owner of valid copyright registrations in the three (3) images identified in TAC ¶7 as (a), (x), and (aa), and judgment should be entered in favor of Defendants on those claims;

3)      Plaintiff alleges that copyright registration #TX0006031402, for the book *Not Fade Away* (the "NFA Registration"), underlies its claim for infringement of the thirteen (13) individual images identified in TAC ¶7 as (a), (b), (e), (l), (r), (t), (u), (x), (y), (z), (aa), (ee), and (gg) (the "NFA Images").  The NFA Registration does not, however, cover the NFA Images, because the "nature of authorship" claimed on the registration is "entire text and compilation of photographs," not the photographs themselves.  In addition,  the NFA Registration is not entitled to a presumption of validity, and even if valid would only extend to previously-unpublished works, which are not identified in the Registration.  As such, the NFA Registration is insufficient to support litigation for infringement of the individual NFA Images pursuant to 17 U.S.C. § 411(a);

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

2

4)      Plaintiff alleges that copyright registration #VA1352549, for the book *Jim Marshall: Proof* (the "*Proof* Registration"), underlies its claim for infringement of the eleven (11) individual images identified in TAC ¶ 7 as (c), (g), (h), (o), (p), (q), (s), (w), (ff), (hh) and (ii) (the "*Proof* Images").  In fact, the *Proof* Registration does not cover any previously-published *Proof* Images, (which most appear to be), and in any event is insufficient to support litigation for infringement of the *Proof* Images pursuant to 17 U.S.C. § 411(a) because of its failure to identify previously-published works and works owned and/or authored by others;

5)      Defendants are entitled to an order dismissing Plaintiff's first cause of action for copyright infringement with prejudice as to images (a)-(mm), and entering judgment thereon in favor of Defendants, by virtue of Plaintiff's copyright misuse and unclean hands in connection with the images in dispute; and

6)      Plaintiff cannot produce competent evidence sufficient to rebut Defendants' direct evidence that Marshall considered the transactions upon which Plaintiff bases its second cause of action for conversion to be loans rather than sales, and judgment therefore must be entered in favor of Defendants on Plaintiff's second cause of action.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Joint Statement of Undisputed Facts, Declaration of S. Christopher Winter with accompanying exhibits, the Request for Judicial Notice, the pleadings and papers already on file in this action, and on other such information as may properly be brought to the Court's attention at or before the hearing on this Motion.

Dated:  April 4, 2013                          DYKEMA GOSSETT LLP


By:  /S/ *S. Christopher Winter*
       S. Christopher Winter
       Vivian S. Lee
       Attorneys for Defendants
       JOHN VARVATOS ENTERPRISES, INC.
       JOHN VARVATOS
       BLOOMINGDALE'S, INC.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**DYKEMA GOSSETT LLP**
**333 SOUTH GRAND AVENUE, SUITE 2100**
**LOS ANGELES, CALIFORNIA 90071**

# <u>TABLE OF CONTENTS</u>

I.   Introduction ............................................................................................................ 1

II.  Factual Background ................................................................................................ 3

    A.   Plaintiff's Frequently-Changing Allegations .............................................. 4

    B.   The TAC Lists Five Copyright Registrations Not Owned by Plaintiff ...................... 5

    C.   Evidence Subject to Judicial Notice Establishes That Three Additional Images Were Published Before 1978 Without Copyright Notice in Marshall's Name ........... 6

    D.   Images Published in *Not Fade Away* ......................................................... 6

    E.   Images Published in *Proof* ........................................................................ 8

    F.   Images Published on Album Covers without Proper Copyright Notice .................... 9

    G.   Plaintiff's Lack of Information Concerning the  Creation and Publication of the Images in Suit ........................................................................................... 9

    H.   Plaintiff's Inaccurate Representations to the Copyright Office ............................ 10

III. Summary Judgment Standard ............................................................................... 10

IV. Plaintiff's Defective Copyright Registrations Cannot Support Its Copyright Infringement Claims ............................................................................................ 11

    A.   Copyright Registrations Held In The Name Of Others Do Not Establish Ownership By Marshall ............................................................................. 12

    B.   Several of the Images in Suit are in the Public Domain ............................... 15

    C.   *Not Fade Away* and *Proof* are Compilations as a Matter of Law ............................ 16

    D.   Plaintiff's Registration For *Not Fade Away* Is Defective And/Or Insufficient To Support A Suit For Infringement Of The Individual Works Therein ....................... 17

        1.   On Its Face, The Registration For *Not Fade Away* Does Not Protect The Individual Images Therein ............................................................ 17

        2.   Plaintiff 's Registration For *Not Fade Away* Is Not Entitled to a Presumption of Validity ................................................................ 18

        *3.*   Plaintiff Cannot Establish Authorship or  Ownership of the Images in *Not Fade Away* .................................................................................. 19

        4.   Plaintiff's Proof Registration is Insufficient to  Register the Individual Images in Proof ................................................................................. 21

    E.   Plaintiff's First Cause of Action Should Be Dismissed Due  To Plaintiff's Misuse of Copyright and Unclean Hands .................................................... 23

V.  Defendants are entitled to summary adjudication of plaintiff's conversion claim ............... 25

VI. Conclusion .......................................................................................................................... 25

**DYKEMA GOSSETT LLP**
**333 SOUTH GRAND AVENUE, SUITE 2100**
**LOS ANGELES, CALIFORNIA 90071**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abend v. MCA, Inc.*,
  863 F.2d 1465 (9th Cir. 1988) ("*Abend*"),
  *aff'd sub nom*, *Stewart v. Abend*, 110 S.Ct. 1750 (1990) ...........................................13, 14, 15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).........................................11

*Bean v. Houghton Mifflin Harcourt Publishing Co.*,
  2010 WL 3168624 (D.Ariz.) .........................................................................22

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)..........................................11

*Hearn v. Meyer*,
  664 F. Supp. 832 (S.D.N.Y. 1987) .................................................................12

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
  307 F. Supp. 2d 521 (S.D.N.Y. 2004) .............................................................22

*In re Napster, Inc. Copyright Litigation*,
  191 F.Supp.2d 1087 (2002) .........................................................................13

*Kodadek v. MTV Networks*,
  152 F.3d 1209 (9th Cir. 1998) .....................................................................12

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
  345 F.3d 1140 (9th Cir. 2003) .................................................................11, 21

*Lasercomb America, Inc. v. Reynolds*,
  911 F.2d 970 (4th Cir.1990) .......................................................................23

*Lin-Brook Builders Hardware v. Gertler*,
  352 F. 2d 298 (9th Cir. 1965) .....................................................................20

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990)........................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)........................................11

*McCormick v. Cohn*,
  *1992 WL 687291 (S.D. Cal. 1992)* .................................................................23

*Morris v. Business Concepts, Inc.*,
  259 F.3d 65 (2d Cir. 2011) .........................................................................13

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*Morton Salt Co. v. G.S. Suppiger Co.*,
    314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942)................................................23

*New York Times Co., Inc. v. Tasini*,
    533 U.S. 483 ............................................................................................13, 14, 15

*qad inc. v. ALN Associates, Inc.*,
    974 F.2d 834 (7th Cir. 1992) ........................................................................23, 24

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................................................12

*Selznick v. Turner Entm't Co.*,
    990 F. Supp. 1180 (C.D. Cal. 1997) .....................................................................15

*Shea v. Fantasy, Inc.*,
    2003 WL 881006 (N.D. Cal. Feb. 27, 2003) ....................................................15, 16

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998) ........................................................................21, 22

*Supermarket of Homes v. San Fernando Valley Bd.*,
    786 F.2d 1400 (9th Cir.1986) .......................................................................23, 24

*Thimbleberries, Inc. v. C & F Enters., Inc.*,
    142 F. Supp. 2d 1132 (D. Minn. 2001).................................................................19

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) ..................................................................................21

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
    354 F.3d 112 (2d Cir. 2003) ........................................................................21, 22

**REGULATIONS**

37 CFR § 202.3 (11) ...................................................................................................21

37 CFR § 203.3.............................................................................................................22

**REGULATORY CASES**

*F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*,
    214 U.S.P.Q.2d 409 (7th Cir.1982) .......................................................................23

*Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*,
    482 F.Supp. 980 (S.D.N.Y.1980), 205 U.S.P.Q. 320 ...........................................22

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................11

Fed. R. Civ. P. 56(c), (e) ......................................................................................11

**STATUTES**

1909 Act, § 18, Pub. L. No. 60-349 (March 4, 1909)..................................13, 15, 16, 20

17 U.S.C. § 24..........................................................................................................14

17 U.S.C. § 26 (repealed 1976) ...............................................................................20

17 U.S.C. § 101 ........................................................................................................16

17 U.S.C. § 103(b)...............................................................................................17, 18

17 U.S.C. § 202 ........................................................................................................19

17 U.S.C. § 204(a) ...................................................................................................15

17 U.S.C. § 406(c) ...................................................................................................16

17 U.S.C. § 409.................................................................................................21, 22

17 U.S.C. § 411(a) ...................................................................................................12

17 U.S.C. § 411(b)...........................................................................................12, 13, 22

17 U.S.C. § 506(c) ...................................................................................................24

17 U.S.C. § 506(e) ...................................................................................................24

17 U.S.C. § 410(c) ...............................................................................18, 19, 20, 21

Uruguay Rounds Agreements Act of 1994.................................................................4

**OTHER AUTHORITIES**

Compendium of Copyright Office Practices, Compendium II, § 619 (1988) ...............18

H.R. No. 94-1476..............................................................................12, 16, 18, 19

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2         Defendants John Varvatos Enterprises, Inc. ("JVE"), John Varvatos ("Varvatos"), and

3    Defendant Bloomingdales, Inc.  ("Bloomingdale's"), (collectively, "Defendants") respectfully

4    submit the following Motion for Summary Adjudication of Claims and Issues.

5    **I.     INTRODUCTION**

6         When rock photographer Jim Marshall ("Marshall") died in 2010, he bequeathed his entire

7    estate, including photographic negatives dating from 1960s and 1970s, to his assistant Amelia Davis

8    ('Davis').  Davis also inherited the copyrights in Marshall's work, to the extent that Marshall

9    owned them at the time of his death.  Davis assigned her interest in those copyrights to Plaintiff Jim

10   Marshall Photography, LLC ("Plaintiff"), of which she is the sole member.  Davis did not inherit –

11   and thus did not assign to Plaintiff – documentary records relating to the authorship, ownership, or

12   publication history of the images in the negatives, because no such records are known to exist.

13        On the basis of Davis's assignment (and an erroneous belief that ownership of a negative

14   establishes ownership of copyright in the image in the negative), Plaintiff sued Defendants, alleging

15   infringement of more than 100 images and seeking millions of dollars in damages. Plaintiff did not

16   undertake any investigation of the copyright status of the images before commencing the litigation.

17   The consequences of Plaintiff's failure to perform basic due diligence have played out in three

18   successive amendments to the Complaint, in which Plaintiff has repeatedly changed its position

19   regarding *when*, *where* and by *whom* the images in dispute were first published, as well as *which*

20   registrations apply to them.

21        The Third Amended Complaint ("TAC") now includes claims for infringement of five

22   copyrights covering five images that Plaintiff does not claim to own,[1] including one for which the

23   registration does not claim photographs as part of the authorship.[2]  Plaintiff does not have standing

24   to sue for infringement of these five works.

25

26

27   ───────────────────

28   [1] TAC ¶ 7(d), (j), (v), (ll), and (mm).
     [2] TAC ¶ 7(v).

NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION // Case No. 4:11-cv-06702-DMR

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

Evidence properly subject to judicial notice establishes that three additional images[3] are either in the public domain or are subject to copyrights owned by others.  Plaintiff similarly lacks standing to sue for infringement of these three works.

Plaintiff claims that Defendants have infringed thirteen images[4] from Marshall's book *Not Fade Away*, first published in 1997.  On its face, the copyright registration in *Not Fade Away* does not extend to the individual images contained in the book, because the nature of authorship claimed is "entire text and compilation of photographs," as opposed to the photographs themselves.  Plaintiff therefore lacks standing to sue for infringement of those images.  Even if the individual photographs were within the scope of the copyright claim, the registration for *Not Fade Away* is (i) not entitled to a presumption of validity, and (ii) fatally defective for its failure to identify preexisting photographs included in the book, among other reasons.  Because the copyright in *Not Fade Away* is invalid and does not cover the individual photos in the book, Plaintiff lacks standing to sue for infringement of these thirteen works.

Plaintiff claims that Defendants have infringed eleven images[5] from the book *Jim Marshall: Proof*, first published in 2004.  Although the copyright registration in *Proof* is entitled to a presumption of validity, that presumption is easily rebutted.  As with *Not Fade Away*, the registration for *Proof* is fatally defective for failure to identify preexisting photographs included in the work, among other reasons.  Moreover, both the history of Plaintiff's amendments to the pleadings in this action and Plaintiff's deposition testimony conclusively demonstrate that Plaintiff cannot prove ownership or authorship of the copyrights for which it is suing. Plaintiff does not have standing to sue for infringement of these eleven works.

Plaintiff's pursuit of litigation for infringement of copyrights that it does not own and for works that have been in the public domain for decades constitutes copyright misuse.  Furthermore, Plaintiff's unclean hands in connection with misrepresentations to the Copyright Office should

---

[3] TAC ¶ 7(a), (x), and (aa).

[4] TAC ¶7(a), (b), (e), (l), (r), (t), (u), (x), (y), (z), (aa), (ee), and (gg).

[5] TAC ¶ 7(c), (g), (h), (o), (p), (q), (s), (w), (ff), (hh) and (ii).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   prohibit it from continuing its suit with respect to the images in suit, and Plaintiff's first cause of

2   action should be dismissed with prejudice.

3       With respect to the Second Cause of Action, the factual record was fully developed in

4   connection with Plaintiff's pending Motion for Partial Summary Judgment. Plaintiff cannot

5   produce any competent evidence regarding Marshall's intent in entering the subject transactions.

6   Indeed, Plaintiff has produced no evidence whatsoever about Marshall's intent. Because

7   Defendants' direct evidence of Marshall's intent stands uncontroverted, judgment on Plaintiff's

8   second cause of action must be entered in Defendants' favor.

9   **II.   FACTUAL BACKGROUND**

10      Jim Marshall ("Marshall") was a photographer who became well-known in the 1960s and

11  1970s for his photographs of rock and jazz legends including Johnny Cash, Jimi Hendrix, Jim

12  Morrison, Janis Joplin, The Rolling Stones, The Beatles, and Jerry Garcia. (SUF ¶1; TAC ¶7). Over

13  his career Marshall created images that came into the public consciousness in part through more

14  than 500 album covers and publication in magazines including *The Saturday Evening Post*, *Rolling

15  Stone*, and many others. (SUF ¶2; TAC ¶7). In addition, Marshall authored or contributed

16  photographs to books including *Tomorrow Never Knows*, a book about the Beatles' last concert

17  published in 1987, *Not Fade Away,* a "best of" collection of Marshall's photography published in

18  1997, and *Jim Marshall: Proof*, a look at the proof sheets from which some of Marshall's most

19  famous images had been selected, published in 2004. (SUF ¶¶ 6, 14, 15; TAC ¶7).

20      In 1998, Amelia Davis became Marshall's personal assistant, a position she held until his

21  death in March 2010. Davis was the sole beneficiary of Marshall's estate, and inherited (among

22  other things) Marshall's photographic negatives. (SUF ¶4). As Marshall's sole heir, Davis also

23  inherited the copyrights in Marshall's body of work, to the extent that Marshall owned them at the

24  time of his death. (TAC ¶4). Marshall's estate did not, however, include records of the publication

25  status, dates of first publication, or other information critical to Davis's ability to determine

26  authorship or ownership of the images she inherited. (Declaration of S. Christopher Winter

27  ("Winter Decl."), ¶¶18, 19; Exs. A, B). Davis assigned her copyrights in Marshall's work to

28  Plaintiff Jim Marshall Photography, LLC. (TAC ¶4).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**A.    Plaintiff's Frequently-Changing Allegations**

In the initial Complaint, Plaintiff alleged infringement of (among other things) twelve images based on the registration of the 2004 book *Proof*, and seven unpublished images for which applications to register were filed in December 2011.  (Complaint, Dkt. #1). Since then, over the course of three amendments to the complaint and twice–amended verified interrogatory responses, Plaintiff has revised its position regarding the dates of first publication of, and the identity of the registrations applicable to, no fewer than fifteen images in suit, some multiple times.  (Winter Decl., ¶13, Ex. J).  A chart setting forth the alleged ownership and registration status of the images identified in the TAC is attached to the Winter Decl. as Ex. "J".

By way of example, Plaintiff's allegations regarding the first image at issue in this suit, "Jimi Hendrix with his guitar from Monterey Pop, 1967" ("Hendrix1") have evolved as follows (additional facts provided for context):

- From the filing of the Complaint on 12/29/2011 through August, 2012, Plaintiff alleged that Hendrix1 was protected by the copyright in the book *Proof*,  published in **2004**.  (Winter Decl. ¶13, Ex. J)

- In Interrogatory Responses dated August 6, 2012, Plaintiff affirmed under penalty of perjury that Hendrix1 was first published in **2004**.  (Winter Decl. ¶8, Ex. E).

- Hendrix1 is the <u>front cover photo</u> for the book *Not Fade Away,* published in **1997**.

- In Responses to Requests for Admission also dated August 6, 2012, Plaintiff admitted that Hendrix1 was published in **1997**, in *Not Fade Away*, contradicting the sworn interrogatory response served <u>that same day</u>.  (Winter Decl. ¶11, Ex. H).

- In the TAC, filed on October 9, 2012, Plaintiff alleged that Hendrix1 was published in **1997**. (Dkt. No. 39).

- In Amended Interrogatory Responses dated November 2, 2012, Plaintiff revealed that "a cropped version of the photograph appeared on album jacket 'Historic Performances Recorded at the Monterey International Pop Festival June 16, 17, 18, 1967,' **published in Canada, 1970**" (Winter Decl. ¶9, Ex. F).

- Plaintiff did <u>not</u> reveal that a cropped version of the photograph appeared on album jacket "Historic Performances Recorded at the Monterey International Pop Festival June 16, 17, 18, 1967," published by Reprise Records in **1970 in the United States**. (Winter Decl. ¶17).[6]

---

[6] A cynic might suspect that Plaintiff alleged foreign publication in order to provide grounds for restoration of copyright under the Uruguay Rounds Agreements Act of 1994, which "restores copyright automatically for certain foreign works that were placed in the public domain because they lacked proper notice or failed to comply with other legal requirements." http://www.copyright.gov/circs/circ03.pdf .

- Plaintiff continues to allege under penalty of perjury that Hendrix1 is protected by the NFA Registration (*i.e.*, that it was first published in the U.S. in **1997**), notwithstanding that the **1970** U.S. release on Reprise Records can be purchased on eBay and is described on Wikipedia. (Winter Decl. ¶17)[7]

Thus, for a single image, Plaintiff has sworn under penalty of perjury that it was first published on three different dates more than thirty years apart, under two different registrations, and still does not identify the correct first domestic publication.  (Winter Decl. ¶13, Ex. J).

**B.    The TAC Lists Five Copyright Registrations Not Owned by Plaintiff**

TAC ¶ 7 includes five images that are allegedly protected by copyright registrations that are not in the name of Plaintiff or Marshall:

| TAC ¶ 7 | Title of Photograph | Registration /Renewal Number | Copyright Claimant | Authorship on Application |
|---|---|---|---|---|
| (d) | Two photos of Janis Joplin 1967 published in October 1970 issue of *Rolling Stone* | B00000647050/ RE0000791298 | Straight Arrow Publishers Company, LP (PWH)[8] | - |
| (j) | Jimi Hendrix, Panhandle San Francisco 1967 (2 photos) | B00000647044/ RE0000791292 | Straight Arrow Publishers Company, LP (PWH) | |
| (v) | John Coltrane - The Prestige Recordings 1991 | SR0000153376 | (c) Fantasy, Inc. | Text and Compilation: Fantasy, Inc., employer for hire |
| (ll) | Thelonious Monk - Plays Duke Ellington 1979 | SR0000011797 | (c) Milestone Records | Compilation of sounds, text & artwork: Milestone Records, employer for hire |
| (mm) | Thelonious Monk and Family 1964 | B00000100942/ RE0000597731 | The Curtis Publishing Company (PCW) | |

Four of the registrations ((d), (j), (ll), and (mm)) do not mention Marshall at all (RJN Exs. E, H, Q, R); one (v) expressly excludes photographs as preexisting works.  (RJN Ex. L). The registration for (ll) specifically states that the claimant, Milestone Records, is the author of the artwork as an

---

[7] http://en.wikipedia.org/wiki/Historic_Performances_Recorded_at_the_Monterey_International_Pop_Festival (last accessed April 3, 2013).

[8] "PWH" is an abbreviation for "Proprietor of a copyright in a Work for Hire" in the Catalog of Copyright Entries ("CCE").  See http://www.copyright.gov/records/ .

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

employer for hire.  (RJN Ex. Q).  Plaintiff has not produced any documents evidencing transfers of title from any of these claimants, nor any agreements with these claimants giving Marshall a right to recover title. (Winter Decl. ¶16).

## C. Evidence Subject to Judicial Notice Establishes That Three Additional Images Were Published Before 1978 Without Copyright Notice in Marshall's Name[9]

Three of the images identified in TAC ¶7 were originally published decades before the first publication date alleged in the TAC, in works that did not include a copyright notice in Marshall's name:

| Photograph in TAC ¶ 7 | Title of Photograph | Copyright Alleged in TAC | Known Earlier Publication | Known Earlier Publication Date |
|---|---|---|---|---|
| (a) | Jimi Hendrix with guitar from Monterey Pop 1967 | 1997 TX 0006031402 (*Not Fade Away*) | "Historic Performances Recorded at the Monterey International Pop Festival June 16, 17, 18, 1967 © Reprise Records | 1970 |
| (x) | Kris Kristofferson Hollywood 1969 | 1997 TX 0006031402 | "Jesus was a Capricorn," © Monument Records | 1972 |
| (aa) | Waylon Jennings San Francisco 1975 | 1997 TX 0006031402 | *Rolling Stone*, © Straight Arrow Publishers Company, LP (PHW) | 2/13/1975 |

Plaintiff has not produced any documents evidencing transfers of title from any of these claimants, nor any agreements with these claimants giving Marshall a right to recover title. (Winter Decl. ¶16).

## D. Images Published in *Not Fade Away*

Thirteen subparagraphs of TAC ¶ 7 identify photographs allegedly protected by Registration Number TX006031402 (the "NFA Registration") for the book *Not Fade Away*.  (TAC ¶ 7). Specifically, Plaintiff claims that it owns valid copyrights in the following individual photographs in *Not Fade Away* by virtue of the NFA Registration:

---

[9] The legal consequence of such publication is described in section IV(B) below.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

| | **TAC ¶ 7** | **Title of Photograph** |
|---|---|---|
| 1. | (a) | Jimi Hendrix with his guitar from Monterey Pop 1967 |
| 2. | (b) | BB King, Albert King and Bobby Bland backstage at Circle Star Theater in Redwood city in the early 1980's |
| 3. | (e) | The Rolling Stones backstage in San Francisco 1965 |
| 4. | (l) | Miles Davis, San Francisco 1971 |
| 5. | (r) | Jim Morrison San Jose in 1967 |
| 6. | (t) | Dead End Woodstock 1969 |
| 7. | (u) | Keith Moon San Francisco, 1972 |
| 8. | (x) | Kris Kristofferson Hollywood 1969 |
| 9. | (y) | Keith Richards Exile Recording Session 1, 1972 |
| 10. | (z) | Johnny Cash Folsom Prison 1969" (also alleged to be covered by registration no. VA0000932352)(1997) |
| 11. | (aa) | Waylon Jennings San Francisco 1975 |
| 12. | (ee) | Jefferson Airplane Golden Gate Park 1967 |
| 13. | (gg) | Janis Joplin Backstage Winterland 1968 |

(collectively the "NFA Images"). *Not Fade Away* is described as a collection of "the best of Jim Marshall's photography" (RJN Ex. B), and the NFA Images include photographs that were originally published prior to 1970 (SUF ¶16), photographs that were originally published in magazines (SUF ¶17), and photographs originally published as album covers. (SUF ¶18). Captions in *Not Fade Away* include the following:

| | |
|---|---|
| T-Bone Walker ("taken for ABC Records for producer Bob Thiel")(1967)(p. 5) | Captain Beefheart ("for the *LA Times* Sunday Magazine") (Early '70s)(p.52) |
| John Lee Hooker ("for *Guitar Player* magazine')(1994)(p.6) | Joni Mitchell ("for *Look* magazine")(1969)(p.54) |
| Alexis Korner ("for Columbia Records")(Mid '70s) (p.16) | Randy Newman ("for *Rolling Stone*")(1973)(p.56) |
| Grace Slick and Janis Joplin** ("taken…for *Teen Set* magazine") (1967)(pgs.38-39) | Mama Cass Elliot ("for the *Saturday Evening Post*")(1967)(p.68) |
| Jefferson Airplane** ("taken for *Look* magazine")(1967)(p.40) | The Allman Brothers Band++ ("for the cover of At Fillmore East") (1969)(p.90) |
| | ** Image in suit   ++Image dropped from suit |

Plaintiff has not produced any agreements between Marshall and the entities for whom he says he was taking the photographs, nor any assignments of copyright from them to him, nor any correspondence with them regarding these images (Winter Decl. ¶16).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**E.     Images Published in *Proof***

Plaintiff alleges that eleven subparagraphs TAC ¶ 7 identify photographs protected by

Registration # VA 0001352549 (the "*Proof* Registration") for the book *Jim Marshall: Proof*

("*Proof*").  TAC ¶ 7.  Specifically, Plaintiff claims that it owns valid copyrights in the following

individual photographs in *Proof* by virtue of the *Proof* Registration:

| | TAC ¶ 7 | Title of Photograph |
|---|---|---|
| 1. | (c) | Ray Charles at Longshoreman's Hall, San Francisco, 1961 |
| 2. | (g) | Miles Davis sitting in the ring at Newman's Gym in San Francisco in 1971 |
| 3. | (h) | Carlos Santana in the recording studio 1968 |
| 4. | (o) | Bill Wyman San Francisco in 1965 |
| 5. | (p) | Mick Jagger San Francisco in 1965 |
| 6. | (q) | Bill Graham Panhandle in San Francisco 1967 |
| 7. | (s) | Carlos Santana Columbia Records Hollywood in 1968 |
| 8. | (w) | Otis Redding Monterey Pop 1967 |
| 9. | (ff) | Jim Morrison San Jose 2, 1968 |
| 10. | (hh) | Keith Richards Exile Recording Session 2, 1972 |
| 11. | (ii) | Thelonious Monk NYC 1963 |

(collectively the "*Proof* Images").  The flyleaf of *Proof* states "[i]n the 1960s and 1970s, Jim

Marshall granted the public something it never had before: access to the most personal, unguarded

moments of the great musicians of the time.  His pictures are the most memorable of the era."

(Winter Decl. ¶6, Ex. C).  At least five photographs by Jim Marshall in *Proof* also appeared in *Not

Fade Away* (on pages 29, 37, 55, 77, and 104).  (SUF ¶8).  The majority of "hero shots" (*i.e.*, the

large photos on the right hand side of the spread) in *Proof* were originally published prior to 1988.

(SUF ¶10).  Captions in *Proof* include the following:

| | |
|---|---|
| The Grateful Dead ("on assignment for *Teen Set* magazine") (1967)(p.6) | Karl Malden, Michael Douglas (photographed…for…*City* magazine.") (1976)(p.66) |
| William Saroyan ("for the *Saturday Evening Post*")(1963)(p.10) | Elia Kazan ("for the men's magazine *Cavalier*") (1963)(p.80) |
| Thelonious Monk ("for the *Saturday Evening Post*")(1963)(p.12) | Roger J. Traynor ("The *Los Angeles Times* . . . commissioned this portrait)(1965)(p.82) |
| Mississippi ("On assignment for *Ramparts* magazine")(1964)(p.24) | Carol Channing ("On assignment for *Life* magazine") (1963)(p.100) |
| Shelly Berman ("photographed. . .for *Pageant* magazine") (1962)(p.28) | Hazard, Kentucky ("for the *Saturday Evening Post*") (1963)(p.110) |
| Janis Joplin ("for *Teen Set* magazine")(1967)(p.30) | |

| Keith Richards** | Mick Jagger |
|---|---|
| ("for *Life* magazine")(1972)(p.32) | ("for a *Life* magazine cover assignment") |
| Garbage Collectors | (1972)(p.116) |
| ("captured for *San Francisco* magazine") | The Who |
| (1965)(p.52) | ("on assignment for *Teen Set* magazine") |
| | (1967)(p.120) |
| | |
| | ** Image in suit |

Plaintiff has not produced any agreements between Marshall and the entities for whom he

says he was taking the photographs, nor any assignments of copyright from them to him, nor any

correspondence with them regarding these images (Winter Decl. ¶16).

### F.   Images Published on Album Covers without Proper Copyright Notice

Certain of the images discussed above were published on record album covers prior to 1978

without any copyright notice in the name of Marshall:

| Photograph in TAC ¶ 7 | Title of Photograph | Copyright Alleged in TAC | Published without © in Marshall's Name |
|---|---|---|---|
| (a) | Jimi Hendrix with guitar from Monterey Pop 1967 | 1997 TX 0006031402 | "Historic Performances Recorded at the Monterey International Pop Festival June 16, 17, 18, 1967" © 1970 Reprise Records |
| (x) | Kris Kristofferson Hollywood 1969 | 1997 TX 0006031402 | "Jesus was a Capricorn," © 1972 Monument Records |
| N/A | N/A | N/A | The Allman Brothers Band At Fillmore East © 1971 Capricorn Records[10] |

(RJN §§III(D)-(F)).

### G.   Plaintiff's Lack of Information Concerning the Creation and Publication of the Images in Suit

Plaintiff is not in possession of any records evidencing dates of first publication of the

images in suit (or any other Marshall images) (Winter Decl. ¶16).  For any particular image,

Plaintiff does not know whether it has been published, when it may have been published, where it

---

[10] This image was included in the initial Complaint but later omitted.  Defendants consider the omission a tacit concession that the image is in the public domain.  Defendants similarly consider each instance in which Plaintiff has changed its position regarding the registration applicable to a particular image to constitute a concession that the previous position lacked merit.  Defendants should be considered the prevailing party on the superseded claims for the purpose of fees and costs.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

may have been published, or whether it was created on assignment as a work for hire (Winter Decl. ¶18,19, Exs. A, B).  Prior to filing this action against Defendants, Plaintiff did not make any attempt to find answers to these questions.  (*Id*.).  Plaintiff did not contact *Rolling Stone* or any other publication in which Marshall's images may have originally been published, nor did it make any effort to investigate those magazines. (*Id*.).  It did not make any attempt to investigate the over 500 album covers on which Marshall's work allegedly appeared, nor to gather copies of those albums. (*Id*.). It did not do research in libraries.   (*Id*.).  It did not even review the magazines in its possession, nor the record albums that were inherited from Marshall (*Id*.).  Plaintiff's belief that it owns the copyrights in the images in this suit is based on the erroneous premise that ownership of photographic negatives is the same as ownership of copyrights in the images in the negatives. (Winter Decl. ¶14, Ex. A).

### H.    Plaintiff's Inaccurate Representations to the Copyright Office

On repeated occasions Plaintiff has attempted to register, as unpublished, works that were published in the 1970s, and has then falsely represented to the Copyright Office in follow –up correspondence that the (published) works were unpublished, before later acknowledging that they had been published decades ago. (Winter Decl. ¶13, Ex. J). One such attempt concerned an image published in an issue of *Rolling Stone* magazine of which Plaintiff owns a copy. (*Id*.). Plaintiff also attempted to register, as unpublished, an image that appears in the book *Not Fade Away*. (*Id*.). Plaintiff even attempted to register, as unpublished, a work that was already registered as published! (*Id*.).  When asked by the Copyright Office for clarification, Plaintiff first falsely represented to the Copyright Office that the (published) work was unpublished, then later acknowledged that is was published, but Plaintiff evidently neglected to inform the Copyright Office that the work was not only published, but was already registered.  (*Id*.).

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that a motion for summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S. Ct. 2548, 91 L.Ed.2d 265 (1986).  A "material" fact is a fact that could affect the outcome of the case pursuant to the governing substantive law, and is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the opposing party to produce evidence of the existence of a genuine issue of material fact for trial in order to defeat the motion.  *Celotex*, 477 U.S. at 331; *see also* Fed. R. Civ. P. 56(c), (e).

The nonmoving party cannot simply rely on the pleadings and must make more than "conclusory allegations [in] an affidavit."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial," and "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548; *Anderson*, 477 U.S. at 249–50, 106 S. Ct. at 2510-11 (internal citations omitted).  Summary judgment is proper when a rational trier of fact cannot find for the nonmoving party on the claims at issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

**IV.**   **PLAINTIFF'S DEFECTIVE COPYRIGHT REGISTRATIONS**

**CANNOT SUPPORT ITS COPYRIGHT INFRINGEMENT CLAIMS**

Summary judgment for the defendant is appropriate in copyright infringement actions where the plaintiff does not have a valid registration of its work. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir. 2003) (affirming the trial court's grant of summary judgment for the defendant in a copyright infringement action on the ground that plaintiff was "unable to survive the necessary first step of an infringement action because the copyright [was] invalid"); *Kodadek v. MTV Networks*, 152 F.3d 1209 (9th Cir. 1998) (same).  A plaintiff may not bring an action for infringement unless she has preregistered or registered the work with the U.S. Copyright Office.  17 U.S.C. § 411(a); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989).  Here,

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

11

1  Plaintiff cannot establish ownership of valid copyrights to the images identified below, and

2  summary judgment should be entered in favor of Defendants for those images.

3      **A.    Copyright Registrations Held In The Name Of Others**

4          **Do Not Establish Ownership By Marshall**

5      Section 501(b) of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "1976 Act")

6  provides that "[t]he legal or beneficial owner of an exclusive right under a copyright" may sue for

7  infringement. 17 U.S.C. § 501(b).  However, no action may be commenced in court unless the

8  copyright claim has been registered or preregistered with the Copyright Office.  17 U.S.C. § 411(b).

9  With respect to images (d), (j), (v), (ll), and (mm) in TAC ¶7, Plaintiff is not the copyright registrant

10  of record.  As such, Plaintiff must establish beneficial ownership of those copyrights by a registered

11  owner in order to have standing to sue.  17 U.S.C. § 411(b); 501(b).  Plaintiff cannot do so.

12      The legislative history of § 501(b) instructs that "a beneficial owner would include, for

13  example, an author who had parted with legal title to the copyright in exchange for percentage

14  royalties based on sales or license fees."  H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159 (internal

15  brackets and quotation marks omitted).  A renewal right alone is not sufficient to create standing;

16  otherwise every author and her statutory successors would be a beneficial owner.  *Hearn v. Meyer*,

17  664 F. Supp. 832, 843-44 (S.D.N.Y. 1987).  A beneficial owner is someone who has a present

18  financial interest in the exploitation of the work.  *Id*.

19      Nothing on the face of the registrations evidences any copyright interest held by Plaintiff.

20  Plaintiff has not produced any agreements with the copyright claimants for these images, or any

21  assignments of rights from these claimants.  Plaintiff has not produced any evidence to suggest that

22  it is entitled to a royalty stream from these images.[11]  Indeed, four of the registrations do not

23  mention Marshall at all, the remaining registration specifically excludes "photographs" as

24  preexisting works.  "The existence of a copyright certificate with someone else's name on it does

25  not vest anyone other than the author with rights to the work.  In order to show ownership, plaintiffs

26

27  _____

[11]To the extent that Plaintiff claims a financial interest in using these images, it should be noted that
28  use by Plaintiff without permission infringes the rights of the true owner.  Here, for example,
Plaintiff's continued exploitation of the photographs of Janis Joplin originally published in 1970 in
*Rolling Stone* infringes *Rolling Stone*'s copyright in those images.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

need to produce chain of title from the <u>listed</u> author to themselves." *In re Napster, Inc. Copyright Litigation*, 191 F.Supp.2d 1087, 1101 (2002) (emphasis added); *Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2011).

The plaintiff in *Morris* was a contributor to *Allure* magazine. *Id.* at 67. The publisher of *Allure* registered with the Copyright Office the issues in which Morris's articles appeared as collective works. *Id.* at 68. Morris retained ownership of the copyrights in her articles. *Id.* Morris did not register with the Register of Copyrights her own copyrights in the articles. *Id.* Defendant reprinted Morris's articles in newsletters without permission. *Id.* Morris sued under the magazine publisher's copyrights. The district court held that Morris lacked standing to sue under 17 U.S.C. § 411(b) and entered summary judgment in favor of defendant. *Id.* The Second Circuit affirmed the district court's order, holding that Morris did not have standing to sue unless she registered her copyright claims in her own name. *Id.* at 73. Like the plaintiff in *Morris*, Plaintiff does not have copyright registrations in its name and judgment should be entered in favor of Defendants on these five works.

Plaintiff is expected to argue that it is the beneficial owner of the copyrights in these five works based on the holding of *Abend v. MCA, Inc.*, 863 F.2d 1465, 1469 (9th Cir. 1988) ("*Abend*"), *aff'd sub nom*, *Stewart v. Abend*, 110 S.Ct. 1750 (1990). In *Abend*, the Ninth Circuit held that "where a magazine publisher has purchased limited publication rights in a work 'under circumstances which show that the author has no intention to donate his work to the public,' copyright notice in the magazine's name is sufficient to obtain a valid copyright on behalf of the beneficial owner, the author or proprietor [of the work]." *Abend*, *supra*, 863 F.2d at 1469. *Abend*, though, is easily distinguishable, and does not support Plaintiff's theory that a plaintiff can file suit for infringement of a copyright without having a registration of that copyright <u>in its own name</u>.

*Abend* addressed a situation that arose under the Copyright Act of 1909, Pub. L. No. 60-349 (the "1909 Act") with respect to contributions to collective works, including magazines. In *New York Times Co., Inc. v. Tasini,* the Supreme Court explained that:

> [p]rior to the 1976 revision . . . authors risked losing their rights when they placed an article in a collective work. Pre-1976 copyright law recognized a freelance author's copyright in a published article only when the article was printed with a copyright notice in the author's

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

13

name. *See* Copyright Act of 1909, § 18, 35 Stat. 1079. When
publishers . . . declined to print notices in each contributor's name, the
author's copyright was put in jeopardy. The author did not have the
option to assign only the right of publication in the periodical; such a
partial assignment was blocked by the doctrine of copyright
indivisibility.  Thus, when a copyright notice appeared only in the
publisher's name, the author's work would fall into the public domain,
unless the author's copyright, in its entirety, had passed to the
publisher . . . [A]bsent a specific contract, a court might find that an
author had tacitly transferred the entire copyright to a publisher, in
turn deemed to hold the copyright in "trust" for the author's benefit.

*New York Times Co., Inc. v. Tasini*, 533 U.S. 483, 494-495(2001) (internal citations and quotation

marks omitted) (citing Nimmer).  This rule, articulated by the Supreme Court, bears repeating:

under the 1909 Act, *unless* either (i) a copyright notice appeared on a collective work under the

<u>author's</u> name (not the publisher's) OR (ii) the author assigned his <u>entire</u> copyright to the publisher,

the work WOULD fall into the public domain.  *Id.*  In order to avoid this seemingly harsh result,

*Abend* carved out a limited judicial exception to the general rule, holding that a copyright notice that

appeared only in the publisher's name, "under circumstances which show that the author has no

intention to donate his work to the public," would not cause an author's work to fall into the public

domain; it would be preserved by the publisher's notice.  *Abend*, *supra*, 863 F.2d at 1469-70.

The story at issue in *Abend* was written by Woorich,  and

was first published in February 1942 in *Dime Detective Magazine*. The magazine
had a "blanket copyright" in the name of its publisher, Popular Publications, Inc.
On April 6, 1943, Popular Publications assigned any rights it had in the story,
except the right of magazine publication, to Woolrich, the author. The assignment
was recorded in the U.S. Copyright Office.

*Id.* at 1467.  Woolrich subsequently assigned movie rights to the story to a production company, and

also agreed to renew the copyright at the appropriate time and assign those rights as well.  Woolrich

died before renewing his copyright.  His executor renewed the copyright in the story pursuant to

[1909 Act] 17 U.S.C. § 24, and later assigned movie rights to Plaintiff Abend.  *Id.*  When the

production company's successors made a movie from the story, Abend sued.  *Id.*  The issue before

the court was whether the 1942 publication without a copyright notice in Woolrich's name resulted

in the story falling into the public domain.

These, then, were the "circumstances" that led the Ninth Circuit to conclude that Woolrich

had "no intention to donate his work to the public" when it was published without an individual

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

14

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  copyright notice:  he received a written assignment of his copyright back from the publisher less

2  than eighteen months after publication, which he duly recorded with the Copyright Office.  There is

3  nothing in *Abend* to suggest that an author can sue under a publisher's blanket copyright without

4  obtaining a written assignment of the copyright from the publisher and recording it with the

5  Copyright Office.  Indeed, to so hold would be to ignore the requirement of 17 U.S.C. § 204(a) that

6  transfers of copyright ownership be in writing - the *Abend* theory that an author is a beneficial

7  owner of a copyright held by the publisher  under the 1909 Act requires that the publisher <u>own</u> the

8  copyright.  Plaintiff does not have standing to sue on the copyright registration held in the names of

9  others unless and until it obtains a written assignment from those whom it claims have been holding

10  the copyrights for its benefit.[12]  *Id., see also Selznick v. Turner Entm't Co*., 990 F. Supp. 1180, 1187

11  (C.D. Cal. 1997) (granting partial summary judgment in favor of defendants because plaintiffs'

12  names did not appear on copyright renewal certificate).

13       The rule articulated in *Tasini* applies to images (a), (x), and (aa) as well, which were first

14  published in 1970, 1972,  and 1975, respectively.  Under the 1909 Act, copyright in published

15  works was secured on the date a work was published with proper notice of copyright.  1909 Act,

16  § 9.  None of these works included a copyright notice in Marshall's name.  At best, Plaintiff is not

17  the owner of these works; at worst (for Plaintiff), they are in the public domain.  Whichever the

18  case, they are not owned by Plaintiff, and Plaintiff does not have standing to sue for their

19  infringement.

20      **B.**    <u>**Several of the Images in Suit are in the Public Domain**</u>

21       Photographs created by U.S. photographers, published with the consent of the

22  photographers, on record albums prior to 1989 without a copyright notice in the name of the

23  photographer  published without proper copyright notice and are in the public domain.  *Tasini*,

24  *supra*, 533 U.S. at 494-95; *Shea v. Fantasy, Inc.*, 2003 WL 881006 (N.D. Cal. Feb. 27, 2003); 1909

25  Act, § 18, Pub. L. No. 60-349 (March 4, 1909); 17 U.S.C. § 406(c).  This rule squarely applies to

26

27

28

---

[12] Plaintiff should also be judicially estopped from relying on the *Abend* "trust" theory by virtue of its allegation in the TAC that it is the "owner" of the copyrights at issue (as opposed to the beneficial owner of a copyright held in the name of another).

1   the images in TAC ¶7(a) and (x), as well as to the images of the Allman Brothers on the cover of *At*

2   *Fillmore East* that were previously at issue.

3       *Shea v. Fantasy, Inc.* is directly on point. Plaintiff Shea filed a complaint against Fantasy,

4   Inc. alleging copyright infringement with respect to a photograph he took in 1966 of comic Lenny

5   Bruce. *Shea*, 2003 WL 881006 at *1. The photograph was published by Fantasy in 1971 in a three

6   LP set of a Bruce performance. *Id*. The photograph on the album was not credited to Shea and did

7   not contain a copyright notice. *Id*. Shea complained to Fantasy, and they agreed that Fantasy

8   would not publish the photo again without permission and would pay Shea for any future use. *Id*.

9       Judge Seeborg of this Court (Magistrate Judge Seeborg at the time) held that the photograph

10  had entered the public domain as a matter of law when published without the requisite individual

11  notice in 1971, and granted summary judgment for defendant. "The 1909 Act required those

12  seeking copyright protection to 'secure the copyright for his work by publication thereof with the

13  notice of copyright required by this title.'" *Id*. at *3 (quoting 17 U.S.C. § 9 (1909 Act)). Shea did

14  not comply with the statutory formalities with respect to the photograph. "By failing to secure such

15  proper notice, Shea forfeited his copyright." *Id*.

16      Here, images (a) and (x) were published on album covers in the 1970s without a copyright

17  notice in Marshall's name. Accordingly, those images are in the public domain as a matter of law.

18      **C.    _Not Fade Away_ and _Proof_ are Compilations as a Matter of Law**

19      Both *Not Fade Away* and *Proof* contain extensive preexisting materials, including

20  previously-published materials and previously existing materials. As such, they must be either

21  compilations, derivative works, or both under the 1976 Copyright Act,[13] because "[b]etween them

22  the terms 'compilations' and 'derivative works' . . . *comprehend every copyrightable work that*

23  *employs preexisting material or data of any kind*. There is necessarily some overlapping between

24  the two, but they basically represent different concepts." H.R. No. 94–1476 at 57 (emphasis added).

25      The terms are defined in 17 U.S.C. § 101 as follows:

26      • A "compilation" is a work formed by the collection and assembling of

27  _____

[13] The 1976 Copyright Act applies to *Not Fade Away* and *Proof* because both works were published

28  after January 1, 1978, when the 1976 Copyright Act went into effect. Pub. L. 94-553 (Oct. 19,
    1976).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.  The term "compilation" includes collective works.

- A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

Here, both *Not Fade Away* and *Proof* fall within the definition of "compilation," and must therefore be considered compilations.[14]  Although the question of whether a work is a "compilation" for the purpose of a statutory damage award is usually a mixed question of fact and law, the narrow issue here can be decided as a matter of law.  The relevant facts – that both *Not Fade Away* and *Proof* incorporate pre-existing works and previously published works – are entirely undisputed, the Court can find that the works meet the definition as a matter of law.  As such, the copyright in the books "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."  17 U.S.C. § 103(b).

**D.** **Plaintiff's Registration For *Not Fade Away* Is Defective And/Or Insufficient To Support A Suit For Infringement Of The Individual Works Therein**

1. On Its Face, The Registration For *Not Fade Away* Does Not Protect The Individual Images Therein

Section 2 of copyright form TX requires the claimant to describe the nature of the authorship for which copyright registration is sought.  The entry in this section defines the scope of protection.  *See* Compendium of Copyright Office Practices, Compendium II ("Compendium II"), § 619 (1988)

_____

[14] Plaintiff denies that the works are either compilations or derivative works.  (Winter Decl. ¶11, Ex. H).

17

("In general, the nature of authorship defines the scope of the registration; therefore, it represents an important copyright fact"). Here, the "nature of authorship" on the NFA Registration is described as "author of entire text and compilation of photographs." A compilation copyright protects only the selection and arrangement of works, and not the preexisting material. 17 U.S.C. § 103(b). The NFA Registration simply does not purport to and does not protect the individual photographs contained in the book. Indeed, the scope of protection sought by the NFA Registration is consistent with what properly should be sought for a compilation of previously-published photographs, as *Not Fade Away* appears to be.

To the extent that Plaintiff argues that 17 U.S.C. § 103(b) protects the individual images because Plaintiff is the copyright claimant in both, its position should be rejected. When a compilation copyright claimant is also the author of the individual works comprising the compilation, the compilation copyright can effect registration of the *unpublished* individual works therein. 17 U.S.C. § 103(b). Here, without a presumption of validity, Plaintiff cannot show that the works are unpublished or that it is the author.

### 2.    Plaintiff 's Registration For *Not Fade Away*
### Is Not Entitled to a Presumption of Validity

17 USC §410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

The five-year distinction is based on recognition that the longer the lapse of time between publication and registration, the less likely to be reliable are the facts stated in the certificate. *Notes of Committee on the Judiciary*, H.R. No. 94-1476. A copyright claimant's failure to register a work within five years of first publication shifts the burden of proving the facts underlying the registration – including authorship, ownership and originality - to plaintiff (as opposed to requiring the defendant to prove the invalidity of the copyright). *See id.* ("Endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the copyright . . .

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

merely orders the burdens of proof.  The plaintiff should not ordinarily be forced in the first

instance to prove the entire multitude of facts that underline the validity of the copyright unless the

defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.")

Failure to register a work within five years of first publication does not itself invalidate a

copyright. *Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001).

"Rather, it merely eliminates the presumption of what evidentiary weight to accord the registration

certificate in judging whether plaintiff has established the protectability of its work." *Id.*

Here, as evidenced by the copyright certificate, *Not Fade Away* was published on

September 1, 1997, and was not registered until June 17, 2004, more than five years after

publication.  (*See* Exhibit 2.)  As such, the statutory presumption of validity does not apply. 17 USC

§ 410 (c).  The burden is thus on Plaintiff to prove "the entire multitude of facts that underline the

validity of the copyright."  Absent the presumption of validity, Plaintiff cannot do so.

> *3.* Plaintiff Cannot Establish Authorship or
> Ownership of the Images in *Not Fade Away*

"Transfer of ownership of any material object ... does not itself convey any rights in the

copyrighted work embodied in the object." 17 U.S.C. § 202. "[T]his includes transfer of ... the

photographic negative ... in which the work was first fixed." H.R. No. 94–1476 at 124. "[I]t has

long been recognized that the sale or other transfer of a material object embodying a work protected

by statutory copyright does not in itself constitute an assignment or license of such copyright." 3

Nimmer, Nimmer on Copyright § 10.09[A] at 10–78.3.

The history of Plaintiff's serial revisions of the pleadings is illustrative of the chaos that

ensues from Plaintiff's belief that it acquired copyrights in all of Marshall's negatives, and its

related near complete lack of knowledge regarding the copyright status of the images it claims to

own.  To the extent that either party has been able to determine where the images in Not Fade Away

were published, only one of them – the separately-registered photograph of Johnny Cash – appears

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   to belong to Marshall.  The others are either in the public domain by virtue of having been

2   published on album covers or owned by the publishers of the magazines in which they appeared.

3          It is also useful to note that under the 1909 Act, in the absence of a written reservation of

4   rights, copyright initially vested in the party at whose instance and expense a work was created, not

5   in the artist.  The Ninth Circuit articulated the rule in *Lin-Brook Builders Hardware v. Gertler*:

6                  we believe that when one person engages another, whether as
                   employee or as an independent contractor, to produce a work of an
7                  artistic nature, that in the absence of an express contractual
                   reservation of the copyright in the artist, the presumption arises that
8                  the mutual intent of the parties is that the title to the copyright shall be
                   in the person at whose instance and expense the work is done.
9

10  352 F. 2d 298, 300 (9th Cir. 1965).  Indeed, the 1909 Act provides that the word "author" "shall

11  include the employer in the case of works made for hire."  17 U.S.C. § 26 (repealed 1976).  As a

12  matter of law, then, in the absence of an express reservation of rights, the commissioning party,

13  rather than the photographer, is both the author and the owner of the commissioned work.

14         According to their captions, many of the photographs in *Not Fade Away* were taken "on

15  assignment" or "for" others.  Under the 1909 Act, this raises a serious question about whether those

16  photos were created as works for hire.  Marshall is known to have worked for hire for record labels

17  and promoters.  (Winter Decl. ¶ 18; Ex A).  *Not Fade Away* also contains images in the public

18  domain, as set forth above.  Plaintiff does not have any information regarding whether the works

19  were created as works for hire, or whether they were published without proper notice.  (Winter

20  Decl. ¶ 16 ).  Plaintiff's own extensive testimony establishes that it simply does not know who owns

21  the images in *Not Fade Away*.  (*Id*.).  Information in the captions written by Marshall contains

22  unrebutted and compelling evidence that many of the images are not owned by Plaintiff.  To the

23  extent that the Court considers the individual images in *Not Fade Away* to be within the scope of the

24  NFA registration, it should find that registration invalid, and that Plaintiff therefore lacks standing

25  to sue for infringement of the NFA Images.

26

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION // Case No. 4:11-cv-06702-DMR

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

4. <u>Plaintiff's Proof Registration is Insufficient to</u>

<u>Register the Individual Images in Proof.</u>

*Proof* was first published on June 1, 2004, and registered on December 7, 2005, within the five years required under Section 410(c); and Plaintiff's copyright registration is presumptively valid under Section 410(c). In order to defeat the presumption, "an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement." *Lamps Plus*, 345 F.3d at 1144 (*quoting Entm't Research Grp, Inc. v. Genesis Creative Grp., Inc*. 122 F.3d 1211, 1217 (9th Cir. 1997)). "[T]his presumption is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 430 (4th Cir. 2010).

Here, the amendments of pleadings alone militate for a finding that Defendants have rebutted the presumption; Plaintiff's own testimony establishes that Plaintiff does not have any idea who owns its copyrights and is not inclined to investigate. Instead, Plaintiff is content to file suit based on registrations it does not own, and for works in the public domain.

Under 17 U.S.C. § 409, a copyright registration application must include, among other things, "in the case of a compilation or derivative work, an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." Pursuant to 37 CFR § 202.3 (11), only one registration is permitted for the same version of a particular work.

It is undisputed that most of the "hero" shots in *Proof* were published before 1988. The application for *Proof* does not disclose that the work incorporates previously published works, or registered works, much less public domain works and works owned by those on whose behalf they were created. These omissions are material, and as a result the registration of *Proof* does not extend to the individual works it contains. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746-47 (2d Cir. 1998); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003).

In *Streetwise*, a map maker created laminated tourist street maps of many large, international cities, including New York. The defendants created a similar foldable, laminated map that shared

21

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

cartographic conventions, color scheme and size. *Id.* at 741-42. The plaintiff did not register the original version of this map, but registered a derivative work (a later version of the map) which added depictions of the subway and bus systems to an earlier map. *Id.* at 746. The defendants argued that this registration only covered the newly added elements, not the pre-existing map referred to in the certificate. *Id.* at 746-47. The Second Circuit held that because the plaintiff owned both the pre-existing and derivative works, the registration of the derivative work was sufficient to constitute registration of the pre-existing work. *Id.* at 747.

The Second Circuit subsequently clarified that the logic of the *Streetwise* rule turns on the fact that "the registration statement listed the pre-existing work, the plaintiff was the copyright owner of both works and the pre-existing work was wholly subsumed within the registered derivative work." *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 116 (2d Cir. 2003). In other words, the Second Circuit has interpreted its own *Streetwise* rule to have three separate elements: (1) both works have the same owner; (2) the registration of the derivative work listed the underlying work in the appropriate section of the application, and thereby informed the Copyright Office that the work being registered was derivative of that original work; (3) the derivative work encompassed the entire pre-existing work.

A district court in the Southern District of New York interpreted the *Streetwise/Well-Made* rule to mean that a registration certificate that does not identify underlying works affords no protection to such works. *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.,* 307 F. Supp. 2d 521, 528-29 (S.D.N.Y. 2004). Similarly, a district court in Arizona held that the copyright in a compilation does not act to register the individual works therein when it fails to identify those individual works as required by 17 U.S.C. § 409 and 37 CFR § 203.3. *Bean v. Houghton Mifflin Harcourt Publishing Co.*, 2010 WL 3168624 (D.Ariz.); *see also Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980 (S.D.N.Y.1980), 205 U.S.P.Q. 320 (holding that a copyright for stuffed toy gorilla would not be enforced where president of corporate copyright holder conceded knowledge of preexisting stuffed gorilla that it was in public domain at time application for copyright was filed and failed to disclose it).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    These omissions are not technical errors of the sort that can be cured by 17 U.S.C. §411(b);

2    the issue is not whether the information is "inaccurate" but whether certain content is within its

3    scope at all.

4    The reasoning of these cases is consistent with the practical necessity that a copyright

5    applicant provides the Copyright Office with all of the information that it needs to determine

6    ownership, authorship, and duration of copyright.  Plaintiff purports to sue for infringement of

7    individual images published as early as the 1960s, notwithstanding that the registration upon which

8    it relies – which claims a publication date of 2004 - does not disclose that *Proof* includes any

9    preexisting works at all, much less works owned by others or works in the public domain.  A

10   copyright claimant cannot extend the duration of his or her copyrights by simply combining

11   previously published works into a new work and claiming the new publication date, much less

12   obtain copyright protection for works in the public domain by doing so. Denied the protection of the

13   presumption of validity, Plaintiff cannot ownership or authorship, for the same reasons that apply to

14   *Not Fade Away*.  Plaintiff's claims for infringement of the *Proof* Images should be dismissed for

15   lack of standing.

16   **E.      Plaintiff's First Cause of Action Should Be Dismissed Due**

17   **To Plaintiff's Misuse of Copyright and Unclean Hands**

18   The equitable defense of copyright misuse-which has its historical roots in the unclean hands

19   defense - is a complete bar to enforcement of one's copyright.  *See, e.g.*, *F.E.L. Publications, Ltd. v.*

20   *Catholic Bishop of Chicago*, 214 U.S.P.Q.2d 409, 413 n. 9 (7th Cir.1982); *accord Lasercomb*

21   *America, Inc. v. Reynolds*, 911 F.2d 970, 974-75 (4th Cir.1990); *cf. Morton Salt Co. v. G.S.*

22   *Suppiger Co.*, 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942) (applying an equitable

23   misuse defense in a patent case).  Copyright misuse occurs when a plaintiff uses the legal system

24   gain control over material for which it holds no valid copyright.  *qad. inc. v. ALN Associates, Inc.*,

25   974 F.2d 834 (7th Cir. 1992); *see also  McCormick v. Cohn*, 1992 WL 687291 (S.D. Cal. 1992).

26   The equitable defense of unclean hands applies in copyright cases to prevent a plaintiff from

27   gaining equitable relief, such as a permanent injunction. *Supermarket of Homes v. San Fernando*

28   *Valley Bd.*, 786 F.2d 1400, 1408 (9th Cir.1986). The defense, if meritorious, also applies to prevent

23

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    a plaintiff from recovering the legal remedy of damages for a copyright claim, even though a claim

2    for damages would be an action at law. *Supermarket*, 786 F.2d at 1408.

3        In *qad*, the court granted summary judgment in favor of the defendant competitor after it

4    concluded that plaintiff's witnesses had made misrepresentations at the preliminary injunction

5    hearing.  Specifically, they falsely claimed the software at issue was a completely original work, of

6    which plaintiff wrote "every line ... from scratch," and that defendant could only have obtained the

7    code by direct copying of that original work. 770 F.Supp. at 1267. Instead, the court concluded,

8    plaintiff qad had "copied much of the selection, order, arrangement and definitions of fields" from

9    software developed by a third party, but failed to identify its own software as a derivative work, or

10   to acknowledge that defendant itself could have obtained the code from the third party source. *Id*. at

11   1263.

12       Plaintiff's conduct is strikingly similar.  The progression of Plaintiff's pleading amendments

13   compels the conclusion that Plaintiff did not even bother to review books authored by Marshall to

14   see when works had been published before haling Defendants into court, nor to review magazines in

15   its possession with Marshall images on the cover.  Plaintiff admits that it has made no effort to

16   investigate the validity of its claims.  Each time Plaintiff changes the publication date or copyright

17   registration applicable to one of the allegedly infringed images, Defendants are forced to begin

18   anew their analysis of that claim.

19       Plaintiff's questionable conduct is not limited to serial revision, though.  Plaintiff (through

20   counsel) has, on numerous occasions, attempted to register as unpublished previously published

21   works.  Plaintiff has made misrepresentations to the Copyright Office in connection with those

22   applications.  Plaintiff has taken facially inconsistent positions in documents signed under penalty

23   of perjury.  Charts setting forth Plaintiff's changes with respect to each allegedly infringed are

24   attached to the Winter Decl. as Ex. "J".

25       Falsely claiming copyrights in public domain works is a criminal offense pursuant to 17

26   U.S.C. § 506 (c); making knowingly false statements in a copyright application is a criminal offense

27   pursuant to § 506 (e).  Plaintiff is fully aware of the consequences of publication without proper

28   copyright notice under the 1909 Act, especially with regard to album covers.  Plaintiff knew that the

24

1  image of Jimi Hendrix identified in TAC ¶7(a) was in the public domain by November, 2012 at the

2  latest and yet continues to seek to sue Defendants for its infringement and to obtain copyright

3  protection for it.  Public policy demands that such conduct have appropriate consequences, and

4  Plaintiff's claims for infringement of TAC ¶7(a)-(mm) should be dismissed with prejudice.

5  **V.**    **DEFENDANTS ARE ENTITLED TO SUMMARY ADJUDICATION OF**

6          **PLAINTIFF'S CONVERSION CLAIM**

7          It is axiomatic that the primary goal of contract interpretation is to give effect to the mutual

8  intent of the parties.  The factual record in connection with Plaintiff's claim for conversion was

9  fully developed in connection with Plaintiff's pending Motion for Partial Summary Judgment.

10 Plaintiff cannot produce <u>any</u> competent evidence regarding Marshall's intent in entering the subject

11 transactions, let alone evidence supporting the theory that he intended them as loans.  Indeed,

12 Plaintiff has produced no evidence whatsoever about Marshall's intent.  Defendants' direct evidence

13 of Marshall's intent stands uncontroverted,  and judgment on Plaintiff's second cause of action must

14 be entered in Defendants' favor

15 **VI.**   **CONCLUSION**

16         For the foregoing reasons, Defendants John Varvatos Enterprises, Inc., John Varvatos, and

17 Bloomingdales, Inc. respectfully request that the Court grant this Motion for Summary Adjudication

18 in favor of Defendants.

19

20 Dated:  April 4, 2013                    DYKEMA GOSSETT LLP

21

22                                         By:  /S/ *S. Christopher Winter*
                                               S. Christopher Winter
23                                             Vivian S. Lee
                                               Attorneys for Defendants
24                                             JOHN VARVATOS ENTERPRISES, INC.
                                               JOHN VARVATOS
25                                             BLOOMINGDALE'S, INC.

26

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION // Case No. 4:11-cv-06702-DMR