United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   JIM MARSHALL PHOTOGRAPHY, LLC,          No. C-11-06702 DMR

12           Plaintiff,                      **ORDER ON DEFENDANTS' MOTION
                                             FOR PARTIAL SUMMARY
13      v.                                   JUDGMENT**

14   JOHN VARVATOS OF CALIFORNIA, *et al.*,

15           Defendants.

16   _____/

17                          **I.  Introduction**

18           In this action, Plaintiff Jim Marshall Photography, LLC alleges a copyright infringement

19   claim against Defendants John Varvatos Enterprises, Inc. ("JVE"), John Varvatos, an individual

20   ("Varvatos"; collectively, "Varvatos Defendants"), and Bloomingdale's, Inc. (collectively,

21   "Defendants"), as well as a claim of conversion against the Varvatos Defendants.  At issue in this

22   motion is Plaintiff's copyright infringement claim as to approximately 149 photographs[1] taken by

23   _____

24           [1] In its third amended complaint ("TAC"), Plaintiff specifically identifies 49 individual
     photographs in which it claims copyright interests that Defendants allegedly infringed.  (TAC ¶ 7.)
25   Plaintiff also alleges that it is "the owner of approximately another 100 unpublished photographs
     contained on proof sheets that are the subject of a pending application for copyright registration . . . filed
26   with the U.S. Copyright Office on September 26, 2012."  (TAC ¶ 8.)
             In this motion, Defendants challenge Plaintiff's standing to sue for infringement as to 29
27   individual images by Marshall on various grounds.  Defendants also move for summary judgment on
     their affirmative defenses of copyright misuse and unclean hands, but do not state whether these
28   defenses apply to all of the images-in-suit or to a subset thereof.  The court will assume that as to their
     affirmative defenses, Defendants move as to the copyright allegations pertaining to all of the images-in-

the late Jim Marshall that are contained on proof sheets.  The Varvatos Defendants reproduced the proof sheets as well as individual images from the proof sheets, and displayed the reproductions in JVE stores and JVE-branded retail spaces located in Bloomingdale's stores.[2]  (TAC ¶ 9; Mar. 7, 2013 Updated Joint Case Management Conference Statement 2-3.)  Defendants seek summary judgment as to 29 individual works on the grounds that Plaintiff does not have standing to sue for infringement because Plaintiff cannot establish its ownership of the copyrights in these images.  Defendants also argue that Plaintiff does not have proper copyright registrations of the works at issue, which is a prerequisite to filing an infringement lawsuit.  17 U.S.C. § 411(a).  Defendants also seek summary judgment based on their affirmative defenses of copyright misuse and unclean hands.  For the following reasons, the court grants the motion in part.

## II. Facts and Background

Jim Marshall became renowned in the 1960s and 1970s for his photographs of legendary rock and roll and jazz musicians, including Jimi Hendrix, Janis Joplin, the Rolling Stones, John Coltrane, the Beatles, and Jerry Garcia.  (Jt. Statement of Material Facts Not in Dispute ("SUF") 1; TAC ¶¶ 4, 7.)  During his fifty-year career, Marshall created hundreds of images that were published on more than 500 album covers and in magazines such as *Rolling Stone* and *The Saturday Evening Post*.  (SUF 2.)  Marshall's work also included books of his photographs, including *Not Fade Away*, a "best of" collection published in 1997, and *Jim Marshall: Proof* ("*Proof*"), a 2004 collection of proof sheets from which some of his most famous images had been selected.  (SUF 5, 6, 13, 14.)

_____

suit.

[2] Plaintiff's TAC does not clearly separate its allegations regarding the copyright infringement cause of action as to each Defendant.  (*See* TAC ¶¶ 9-11.)  However, in a March 2013 joint case management statement, Plaintiff asserts that the Varvatos Defendants purchased the original proof sheets containing the images-in-suit, and that they had reproductions of the proof sheets and individual images from the proof sheets made for display in JVE stores and JVE-branded retail spaces in Bloomingdale's stores.  (Mar. 7, 2013 Updated Joint Case Management Conference Statement 2-3.)  Therefore, Plaintiff apparently alleges as to the Varvatos Defendants that they unlawfully copied Marshall's photographs, prepared derivative works therefrom, and distributed and displayed the infringing reproductions in their stores and retail spaces.  (*See* TAC ¶ 9.)  The sole allegation regarding Defendant Bloomingdale's appears to be that it displayed the infringing reproductions in the JVE-branded section of its stores.  (*See* Mar. 7, 2013 Updated Joint Case Management Conference Statement 2-3; TAC ¶ 9.)

**United States District Court**
For the Northern District of California

In 2008, the Varvatos Defendants bought 52 original proof sheets from Marshall, each containing multiple individual photographs.  The Varvatos Defendants enlarged and reproduced the proof sheets, as well as certain individual images contained therein, and displayed them in their stores and retail spaces.  (Jt. Statement of Material Facts Not in Dispute Re Pl.'s Second Mot. for Partial Summ. J. 1-3, 5, 7.)  Marshall died in March 2010.  (SUF 3.)  Amelia Davis worked as Marshall's assistant from 1998 until his death.  She was the sole beneficiary of his estate.  (SUF 4; Decl. of Davis, Apr. 18, 2013, ¶ 2.)  Davis assigned all of her rights in Marshall's work to Plaintiff Jim Marshall Photography, LLC.  (TAC ¶ 4.)  Plaintiff filed this lawsuit in 2011, alleging, *inter alia*, copyright infringement as to the 52 proof sheets and the images they contained on the grounds that Defendants did not have Marshall's permission to reproduce and display the images.  (*See* Compl. ¶¶ 7-11.)  In response, Defendants claim that Marshall expressly and impliedly authorized Defendants to copy images from the proof sheets for display in their stores and retail spaces.  (Answer ¶ 10.)

As Marshall's sole beneficiary, Davis inherited Marshall's photographic negatives and all existing rights to his work.  It is undisputed that Marshall created all of the images at issue in this lawsuit.  However, Marshall's estate did not include records critical to determining the legal ownership of the copyrights in the images, such as documents evidencing the publication history of the photographs.  As discussed below, the publication history of an image may be central to the question of whether the image has become part of the public domain.  Davis admitted that she does not have any records indicating when the images in suit were first published, (Decl. of Winter, Apr. 4, 2013, Ex. A (Davis Dep. Aug. 20, 2012) 171:14-21; 173:12-16; 177:7-16), nor does she have personal knowledge of such information.  For example, Davis was questioned about a photograph of Jimi Hendrix from *Not Fade Away* that also appeared on an album cover in 1970.  (Decl. of Winter, Ex. B (Davis Dep. Mar. 1, 2013 ("Pl.'s Dep.")) 17:7-9; 26:9-17.)  When asked whether she had any way of knowing whether the album cover was the first publication of the image, she responded, "I don't know.  Jim took a lot of pictures.  And sometimes they were used and sometimes they weren't. I really don't know."  (Pl.'s Dep. 26:18-22.)  She also testified that Marshall did not have any method of segregating unpublished negatives from published negatives.  (Davis Dep. 168:22-169:1.)

1    Marshall's estate also did not include documentation of the circumstances under which he

2    created the images.  Such information is also critical to the question of copyright ownership, as the

3    author of a work may not own the copyright in that work if it was created as a work for hire for

4    another.[3]  Although Marshall did a great deal of photographic work for magazines and record album

5    covers in the 1960s and 1970s, Davis does not have records identifying the specific publications and

6    recording companies.  (Davis Dep. 179:11-25.)  Nor does Davis have copies of the magazines from

7    the 1960s and 1970s in which Marshall's work was published, other than one single issue of *Life*

8    magazine.  (Pl.'s Dep. 27:6-9; 28:20-29:10.)  Davis inherited Marshall's record collection, (Pl.'s

9    Dep. 21:20-22), and believes the collection includes "some" of the examples of the albums on which

10   Marshall's photographs appeared.  (Pl.'s Dep. 29:24-30:11.)  However, she does not have a

11   collection of all of the albums containing Marshall's photographs.  (Pl.'s Dep. 30:21-24.)

12   Davis does not know whether Marshall had contracts with the magazines in which his

13   photographs appeared, only that he kept the negatives of those images.  (Davis Dep. 184:22-186:12.)

14   She has no written agreements between Marshall and *Rolling Stone,* or between Marshall and any

15   record companies.  (Pl.'s Dep. 41:9-17; 118:1-6.)  In fact, she testified that it was Marshall's habit to

16   destroy records that were more than ten years old, without exception.  (Pl.'s Dep. 92:16-93:7; Davis

17   Dep. 36:2-12; 36:20-25.)

18   The parties do not dispute that the 1997 book *Not Fade Away* includes photographs that were

19   originally published prior to 1970, originally published in magazines, and originally published as

20   album covers.  (SUF 16, 17, 18.)  Marshall wrote captions for the book that indicate that he took

21   some of the photographs "for" various publications, e.g., "for *Guitar Player* magazine," "taken for

22   *Look* magazine," and "for *Rolling Stone*."  (SUF 15.)  Similarly, his captions for photographs in

23   *Proof* include statements such as "on assignment for *Teen Set* magazine," "for the *Saturday Evening*

24   *Post*" and "for a *Life* magazine cover assignment."  (SUF 7.)  The parties dispute the legal

---

25   [3] The legal consequences of whether a work is a "work for hire" are significant: "the employer
26   or other person for whom [a work for hire] was prepared is considered the author . . . , and, unless the
     parties have expressly agreed otherwise . . . *owns all the rights in the copyright*."  17 U.S.C. § 201(b)
27   (emphasis added); *see also Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965)
     (holding that in the absence of a written reservation of rights, a presumption arises that copyright in a
28   work belongs to the person "at whose instance and expense the work is done," rather than in the artist).

United States District Court
For the Northern District of California

significance of Marshall's statements in these captions. Defendants argue that the captions are evidence that the photographs were works for hire. In response, Davis states that since she began working for Marshall in 1998, all "magazine[s], record label[s] or otherwise . . . have been granted licenses to use the photographs as renewals of prior licenses granted or new licenses for new uses," and that "[t]here is simply no evidence that [Marshall] ever worked as anything other than a freelance photographer." (Davis Decl. ¶ 7.) However, she also testified that she has no knowledge of Marshall's business practices prior to 1998. (Davis Dep. 60:23-61:7; 64:7-65:3.) Nearly all of the images in *Proof* were created prior to 1976, and *Not Fade Away* contains some photographs that were published before 1970. (SUF 9, 16.) In addition, numerous copyright registrations for Marshall's photographs appear to contradict Davis's statement, as they show copyright claimants such as Milestone Records, Atlantic Records, and MCA Records as "employer[s] for hire." (Defs.' Req. for Judicial Notice ("RJN"), Exs. L, Q; Defs.' Second Req. for Judicial Notice, Ex. 1.[4])

In this motion, Defendants challenge Plaintiff's standing and ability to bring an infringement action with respect to several categories of images: 1) images for which copyright registrations are

[4] The court grants Defendants' request for judicial notice of Exhibits C-R to Defendants' Request for Judicial Notice ("RJN") and Exhibit 1 to Defendants Second Request for Judicial Notice. These are copyright registrations issued by the United States Copyright Office. Such documents are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence. *See Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) *aff'd*, 328 F.3d 1136 (9th Cir. 2003) (holding that "[c]opyright certificates are the type of documents that the court may judicially notice under Rule 201(b)(2)").

The court also takes judicial notice of the existence of several publications in which Marshall's photographs appeared, and the fact that the publications did not include copyright notices in Marshall's name. (RJN III(A), Ex. S (Oct. 15, 1970 issue of *Rolling Stone*; copyright notice "Copyright © 1970 by Straight Arrow Publishers, Inc."); III(B), Ex. T (Oct. 29, 1970 issue of Rolling Stone; copyright notice "Copyright © 1970 by Straight Arrow Publishers, Inc."); III(C), Ex. U (Feb. 13, 1975 issue of *Rolling Stone;* copyright notice "copyright © 1975 by Straight Arrow Publishers, Inc.").) Judicial notice of these publications is proper as an indication of what was in the public realm at the time. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2009). The court also takes judicial notice of the existence of two album covers containing photographs by Marshall, as well as the fact that the albums did not include copyright notices in Marshall's name. (RJN III(D) (1970 record "*Otis Redding The Jimi Hendrix Experience/Historic Performances Recorded at the Monterey International Pop Festival*"; copyright notice "© 1970 - Warner Bros. Records Inc."); III(F) (1972 record "*Kris Kristofferson Jesus Was a Capricorn*"; copyright notice "© 1972 CBS, Inc."). Defendants lodged copies of the album covers in question. (*See* Notice of Lodging, ¶¶ 2, 4.) Judicial notice of the facts about what appeared on the covers is proper as they are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiff did not object to the court taking judicial notice of these or any other facts.

in the names of third parties, and not in Marshall's name; 2) images which were published before 1978 without a copyright notice in Marshall's name, and therefore may be in the public domain; 3) images which appeared in *Not Fade Away* and *Proof*.

### III.  Legal Standards

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor.  *Id.* at 248.  The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id.* at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV.  Discussion

In order to establish copyright infringement, Plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  Plaintiff bears the burden of proving at trial that it owns a valid copyright in the photographs at issue.  Accordingly, summary

United States District Court

For the Northern District of California

1  judgment as to a particular work in suit is proper if a reasonable juror could not find that Plaintiff

2  owns a valid copyright in the image given the undisputed facts in the record.  *See Lamps Plus, Inc. v.*

3  *Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144, 1147 (9th Cir. 2003) (noting that "[o]wnership of

4  the copyright is . . . always a threshold question" and affirming grant of summary judgment for

5  defendant where plaintiff was "unable to survive the necessary first step of an infringement action

6  because the copyright [was] invalid" (citation omitted)).  In this motion, Defendants challenge

7  Plaintiff's ownership of valid copyrights in several of the images-in-suit, as well as Plaintiff's failure

8  to comply with copyright registration requirements.

9       **A.     Applicable Law**

10       Copyright of artistic works in the United States is governed by either the Copyright Act of

11  1909 ("the 1909 Act") or the Copyright Act of 1976 ("the 1976 Act"), 17 U.S.C. §§ 101 *et seq*.  A

12  dual system of federal and state copyright law existed prior to the passage of the 1976 Act.  Under

13  that system, state common law copyright protected unpublished works, which were those in limited

14  distribution and unavailable to the general public, while federal statute protected published works.

15  *Klekas v. EMI Films, Inc.*, 150 Cal. App. 3d 1102, 1108 (1984); *Batjac Prods. Inc. v. GoodTimes*

16  *Home Video Corp.*, 160 F.3d 1223, 1226 (9th Cir. 1998).  "State 'common law' protection attached

17  upon creation of the work and ended with publication of the work.  Once published, the only

18  protection available was federal statutory copyright."  *Batjac*, 160 F.3d at 1226.  Under the 1909

19  Act, "publication occur[red] when by consent of the copyright owner, the original or tangible copies

20  of a work [were] sold, leased, loaned, given away, or otherwise made available to the general

21  public."  *Brown v. Tabb*, 714 F.2d 1088, 1091 (11th Cir. 1983) (citation omitted).  Publication of a

22  work with proper notice secured the statutory copyright.  *Batjac*, 160 F.3d at 1226.  Section 19 of

23  the 1909 Act set forth the specifications of a proper notice of copyright, and required that a notice

24  consist of the word "copyright" or an abbreviation or symbol thereof, "accompanied by the name of

25  the copyright proprietor," or for certain works, including photographs, "the initials, monogram,

26  mark, or symbol of the copyright proprietor."  *See* 17 U.S.C. §§ 19, 5(j) (1970).  Failure to satisfy

27  the notice requirements meant a "published work was interjected irrevocably into the public

28  domain."  *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996).

United States District Court

For the Northern District of California

The 1976 Act superseded the 1909 Act, and became effective on January 1, 1978.  17 U.S.C. § 301(a).  It eliminated the dual system of federal and state copyright law, along with the requirement of proper notice to secure a copyright.  *See* 17 U.S.C. § 102(a) (providing that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression").  However, the 1976 Act does not provide protection for works that entered the public domain before January 1, 1978.  *See Brown*, 714 F.2d at 1089.

The question of whether the 1909 Act or the 1976 Act applies to a particular work turns on the date of a work's first publication as well as when the alleged infringement occurred.  The 1909 Act determines whether a work published before January 1, 1978 has become part of the public domain for failure to satisfy notice requirements.  *See Dolman v. Agee*, 157 F.3d 708, 712 n.1 (9th Cir. 1998) (noting that the 1909 Act applies in cases in which "creation and publication of a work occurred before January 1, 1978, the effective date of the 1976 Act").  Whether a work published before January 1, 1978 was infringed *after* that date is controlled by the 1976 Act.  *See* Melville B. Nimmer, David Nimmer, *Nimmer on Copyright* ("*Nimmer*"), OV-7 (2012) ("[i]n determining the corpus of law that governs a particular situation, the guiding principle should be to apply the law in effect when the infringement (or other activity), upon which suit is based, arises").

This case implicates both the 1909 and 1976 Acts.  A number of the photographs at issue were published before 1978, and accordingly, the 1909 Act applies in determining whether Plaintiff has valid copyrights in those images or whether they entered the public domain.  Because Defendants' alleged infringement occurred after January 1, 1978, the 1976 Act governs whether Plaintiff's copyrights, if they exist, were infringed.

**B.      The Challenged Categories of Images**

**1.      Images for Which Registrations are in Third Party Names**

A plaintiff may not bring an action for infringement unless he or she has preregistered or registered the work with the U.S. Copyright Office.  17 U.S.C. § 411(a); *see also* 17 U.S.C. § 408(a) (providing that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim"); *see also Morris v. Bus. Concepts, Inc*., 259 F.3d 65, 68 (2d Cir. 2001),

8

United States District Court

For the Northern District of California

*abrogated in part on other grounds by Reed Elsevier v. Muchnick*, 559 U.S. 154 (2010).[5]  A copyright registration certificate made before or within five years after first publication of the work establishes prima facie evidence of the validity of a copyright and of the facts in the certificate.  17 U.S.C. § 410(c).  However, the presumption is rebuttable, and does not definitively resolve the question of ownership of the copyright.  *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1997).  Defendants argue that Plaintiff is unable to maintain its infringement action as to five images because the copyright registrations for those images do not list Marshall as the copyright claimant.  In other words, the registrations are not in Marshall's name, and therefore Marshall should not receive the benefit of a presumption of legal ownership conferred through a valid copyright registration.  (RJN Exs. E, H, L, Q, R.)  The five images are (d), published in October 1970 in *Rolling Stone*; (j), published in September 1970 in *Rolling Stone*; (ll), published in 1979 by Milestone Records; (mm), published in 1964 in *The Saturday Evening Post*; and (v), published in 1991 by Fantasy, Inc.[6]  (*See* TAC ¶ 7.)  Of these five images, three – (d), (j), and (mm) – were published in magazines prior to 1978, and the court must therefore look to the 1909 Act as to these works.  (RJN Exs. E, H, R.)  The remaining two images, (ll) and (v), were published in 1979 and 1991, respectively, by record companies as album cover art for sound recordings.  (RJN Exs. L, Q.)

The copyright registrations for these five images provide information about each registered work, such as the type of work (e.g., "serial" or "sound recording"), title of the work, and the name of the copyright "claimant," who is entitled to a presumption of legal ownership.  Marshall's name does not appear on four of the five registrations.  (RJN Exs. E, H, Q, R.)  The fifth registration, for a 1991 sound recording and accompanying text, lists Marshall as a photographer, but specifically identifies "photos" as preexisting works.  (RJN Ex. L.)  The registrations for the record albums each list the recording company copyright claimant as an "employer for hire."  (RJN Exs. L, Q.)

---

[5] Timely registration is also a prerequisite for certain remedies for infringement under the 1976 Act.  17 U.S.C. § 412(2) requires registration of a work within three months after its first publication for recovery of statutory damages and attorneys' fees.  *See Morris*, 259 F.3d at 68 n.1.

[6] For the most part, the parties did not describe the images at issue in this motion.  Instead, their briefs refer to the images by letter designation (e.g., "(d)").

United States District Court

For the Northern District of California

Defendants argue that as Plaintiff is not the named copyright claimant of record for any of these five images, and therefore is not entitled to a presumption of legal ownership, Plaintiff must establish that it is a beneficial owner of the copyrights in order to have standing to sue for infringement.  Defendants also argue more globally that third party registrations are inadequate as a matter of law to satisfy the registration requirement of the 1976 Act.

Only "[t]he legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.  17 U.S.C. § 501(b).  "A determination of copyright ownership is a conclusion of law based on underlying facts." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985) (citation omitted).  The "legislative history accompanying the [1976] Act states that '[a] 'beneficial owner' for this purpose would include, for example, an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1144 (9th Cir. 2003) (citing H.R. Rep. No. 1476, at 159 (1976)).  Therefore, a beneficial owner is someone who has "a present financial interest in exploitation of his work." *Hearn v. Meyer*, 664 F. Supp. 832, 844. (S.D.N.Y. 1987).

As images (d), (j), and (mm) were each published prior to 1978, the 1909 Act governs ownership of the copyrights in these images.  *See Dolman*, 157 F.3d at 712 n.1.  As noted above, the 1909 Act included a notice requirement; if the original publication of a work was not accompanied by proper notice, "the published work was interjected irrevocably into the public domain." *Twin Books Corp.,* 83 F.3d at 1165.  Plaintiff has not submitted any evidence that it met the notice requirement of the 1909 Act with respect to these three images.  However, Plaintiff argues that the images did not fall into the public domain, and that it has a beneficial ownership in the copyrights in these works pursuant to the decisions in *Abend v. MCA, Inc.*, 863 F.2d 1465, 1469 (9th Cir. 1988), *aff'd sub nom*, *Stewart v. Abend*, 495 U.S. 207 (1990), and *Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 399 (2d Cir. 1970).  Those cases addressed a certain situation that arose under the 1909 Act with respect to periodicals.

In *Abend*, an author's story was first published in 1942 in a magazine.  The magazine asserted a "blanket copyright" for all of the material in the magazine in the name of its publisher.  863 F.2d at 1467.  The publisher assigned all rights it had in the story to the author, except for the

10

United States District Court

For the Northern District of California

right of magazine publication.  The assignment was duly recorded in the U.S. Copyright Office.  *Id*.

The author subsequently assigned the movie rights to a production company and agreed to renew the

copyright at a future date and assign those renewed rights as well, but died before renewal.  *Id*.

After his death, the author's executor renewed the copyright and later assigned movie rights in the

story to the plaintiff.  *Id*.  The issue before the *Abend* court was whether the 1942 magazine

publication of the story without a copyright notice in the author's name resulted in the story falling

into the public domain.  *Id*. at 1469.  The court examined the earlier-decided Second Circuit decision

in *Goodis*, which dealt with similar facts: "the author of a story granted limited rights to the

publisher of a periodical.  The publisher registered a blanket copyright in the issue of the periodical

that contained the story.  The author never separately copyrighted his work."  *Id*. (citing *Goodis*, 425

F.2d at 399).

As the Ninth Circuit explained, under the 1909 Act's "doctrine of indivisibility," publication

of the story with copyright notice solely in the magazine publisher's name would result in the story

falling into the public domain.  *Id*.  This was because under the doctrine, the publisher's copyright in

the magazine could not protect the writer's interest in the story, for "a 'licensee' of a copyright – i.e.,

someone who holds only partial copyright privileges, [could] not copyright a work in the licensee's

name."  *Id*. (citing *Goodis*, 425 F.2d at 400 (noting that the doctrine of indivisibility "rejects partial

assignments of copyrights and requires a proprietor or assignee of a copyright to hold nothing less

than all the rights in a copyrighted work)).  In *Goodis*, the Second Circuit created an exception to the

doctrine of indivisibility, holding that "the publisher's copyright effectively protected the story and

gave the author beneficial ownership of a copyright in the story."  *Id*.  In *Abend*, the Ninth Circuit

adopted the Second Circuit's exception to the harsh results that would otherwise flow from the strict

application of the doctrine of indivisibility.  The court held that "where a magazine publisher has

purchased limited publication rights in a work 'under circumstances which show that the author has

no intention to donate his work to the public, copyright notice in the magazine's name is sufficient

to obtain a valid copyright on behalf of the beneficial owner, the author or proprietor [of the

work].'"  *Id*. (citing *Goodis*, 425 F.2d at 399) (brackets in original).

Here, Plaintiff argues that through application of the *Abend* rule, the three images that first

appeared in magazines did not fall into the public domain, even though Marshall apparently did not

provide notice upon their publication.  Plaintiff further asserts that the magazines' publication

notices suffice to secure a valid copyright on his behalf under the *Abend* rule.  However, Plaintiff

has failed to put forth any evidence demonstrating that the rule applies in this instance.  Specifically,

there is no record evidence that Plaintiff has satisfied the two requirements for application of the

exception announced in *Abend*: 1) that the magazine publishers purchased limited publication rights

to Marshall's images and 2) that the publishers bought such rights "under circumstances which show

that [Marshall had] no intention to donate his work to the public."  *Abend*, 863 F.2d 1465; *see also*

*Varon v. Santa Fe Reporter*, No. 81-399-JB, 1982 WL 1289, at *1 (D. N.M. Jul. 2, 1982) (applying

*Goodis* where plaintiff submitted evidence that magazine that published his photographs "only had a

one-time rental use" of the photographs); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F.

Supp. 1533, 1545-47 (M.D. Fl. 1990) (applying *Goodis* where facts showed that artist "did not

intend to forfeit ownership of the copyright to" sound recordings).

The first prong of the *Abend* rule requires Plaintiff to establish that the publishers maintained

only limited publication rights in Marshall's images.  When questioned at oral argument, the only

record evidence identified by Plaintiff to satisfy this prong was Davis's testimony that the negatives

for the images at issue were in Marshall's possession before his death and now are in Plaintiff's

possession, and that during Davis's thirteen years working for him, Marshall (and his estate,

following his death) only granted licenses to third parties to publish his works.  (Davis Decl. ¶ 7.)

This evidence is insufficient to trigger application of the *Abend* rule.  The fact that Marshall kept

photographic negatives does not prove that he retained ownership of the copyrights in those

photographs.  Ownership of a copyright "is distinct from ownership of any material object in which

the work is embodied."  17 U.S.C. § 202; *see Kim Seng Co. v. J & A Importers, Inc.*, 810 F. Supp.

2d 1046, 1056 (C.D. Cal. 2011) (rejecting contention that photographer conveyed ownership of

copyright in photograph by "delivering the photographic negative" to plaintiff's predecessor in

interest, citing 17 U.S.C. § 202).  The legislative history of the 1976 Act emphasizes this distinction:

> . . . copyright ownership and ownership of [the] material object in which the copyrighted work is embodied are *entirely separate things*.  Thus, transfer of a material object does not of itself carry any rights under the copyright, and this

United States District Court

For the Northern District of California

> includes transfer of the copy or phonorecord – the original manuscript, the photographic negative, the unique painting or statue, the master tape recording, etc. – in which the work was first fixed. *Conversely, transfer of a copyright does not necessarily require the conveyance of any material object.*

H.R. No. 94-1476, at 124 (1976) (emphasis added). Plaintiff has introduced no evidence to support its bald assertion that retention of the negatives equates to ownership of copyrights therein, such as evidence of relevant industry custom or practice.[7] Without such evidence, the fact of Plaintiff's possession of the negatives is legally insignificant to establish ownership. Davis's statement about Marshall's licensing practices is entitled to little or no weight, given that the three images in question were published over twenty years before Davis began working for Marshall. (*See* RJN Exs. E, H, R.)

Plaintiff argues that the absence of evidence that the magazines claimed rights in the photographs beyond limited publication rights should result in Plaintiff's entitlement to a presumption that it has met the first prong of the *Abend* rule. This turns the burden of proof on its head. Essentially, Plaintiff argues for an "*Abend* presumption"; if there is no proof that a publisher asserted copyright in a work beyond limited publication rights, then the burden shifts to Defendants to establish that the magazine retained only limited rights in the work. Plaintiff points to no supporting authority for this extraordinary proposition. Indeed, case law only underscores that Plaintiff must come forward with affirmative proof of legal or beneficial ownership. *See Goldsmith v. Max*, No. 79 Civ. 6926, 1981 WL 1428, at *7 (S.D.N.Y. Mar. 31, 1981) (following bench trial, holding that *Goodis* did not apply in part because there was no "evidence of an agreement or license wherein plaintiff reserved her proprietary rights in the photograph *and* manifested her intent not to donate her work to the public" (emphasis in original)). Even at the pleading stage, a plaintiff bears the burden of alleging adequate facts to support a claim of equitable ownership of copyrights. Numerous courts have dismissed complaints arising under the 1909 Act where plaintiffs have failed to adequately plead facts supporting that conclusion with particularity. *See Hoffman v. Santly-Joy,*

---

[7] During her deposition, Davis was asked if she believed that "ownership of the negative is conclusive as to ownership of the copyright." Davis responded "Absolutely." (*See* Davis Dep. 186:13-16). Davis' statement reflects a misunderstanding of the law, rather than constituting evidence of ownership.

1   *Inc.*, 51 F. Supp. 779, 780 (S.D.N.Y. 1943) (noting that if the plaintiffs "had pleaded facts upon

2   which their alleged equitable interest in the copyright could be predicated, they would be proper

3   parties entitled to bring a suit for infringement, even though the legal title to the copyright was in the

4   name of another"); *Alexander v. Irving Trust Co.*, 132 F. Supp. 364, 369 (S.D.N.Y. 1955) (finding

5   plaintiff had no standing to bring an action for infringement and noting that "plaintiff must do more

6   than plead the legal conclusion asserting equitable ownership.  Facts supporting the allegation that

7   copyright was registered in the name of another for plaintiff's benefit must be established." (citing

8   *Hoffman*, 51 F. Supp. at 779)); *see also S. Music Publ'g Co., Inc. v. Walt Disney Prods.*, 73 F. Supp.

9   580, 582-83 (S.D.N.Y 1947) (denying motion to dismiss where contracts attached to complaint

10  sufficiently supported plaintiff's claim as equitable owner of copyright).  Those cases held that an

11  unsupported assertion of ownership in a copyright was insufficient to survive a motion to dismiss.

12  Here, on a motion for summary judgment, Plaintiff has the burden to produce significant probative

13  evidence – more than a "scintilla" – to support its claim of copyright ownership that Defendants put

14  at issue in this motion.  *See TW Elec. Serv., Inc.*, 809 F.2d at 630; *Anderson,* 477 U.S. at 252.  As

15  discussed above, the evidence Plaintiff offered in support of beneficial ownership in these images –

16  its current possession of the negatives, plus Marshall's licensing practices that were in effect twenty

17  years after the relevant time period – has little if any probative value.

18          The court recognizes that this case presents an unfortunate situation.  The individual with

19  personal knowledge of the circumstances in which the works in question were created and published

20  is no longer alive, and left behind no documentary evidence to shed light on agreements regarding

21  those works.  Given the absence of first-hand evidence by the creator of the works, Plaintiff could

22  have attempted to provide other supporting evidence.  For example, Plaintiff could have submitted

23  proof of assignments of the copyrights or quit claims in the copyrights from the magazine

24  publishers.  Nor, as previously noted, has Plaintiff presented any evidence of industry custom or the

25  magazines' policies and practices with respect to the acquisition of rights in works they published

26  during the relevant time period.  *See Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 557 (2d Cir.

27  1995) (discussing evidence of magazine's policy and practice regarding the acquisition of copyrights

28  in artists' contributions); *Geisel v. Poynter Prods., Inc.*, 295 F. Supp. 331, 338-39 (S.D.N.Y. 1968)

**United States District Court**

For the Northern District of California

1   (finding credible evidence established that "there was a settled custom and usage in the magazine

2   publishing trade in the early 1930's by which a term or condition defining the scope of rights was

3   implied in fact or understood to be part of the agreement").

4        Plaintiff also appears to argue that its copyright interests should be assumed based on the

5   existence of copyright registrations in the names of third parties.  Again, Plaintiff offers no support

6   for this novel position.  Cases hold that a party that obtains ownership through assignment of a

7   previously-registered copyright bears the burden of proving his or her chain of title.  While not

8   entirely on point, these cases are persuasive.  For example, in *In re Napster, Inc. Copyright*

9   *Litigation*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002), the court held that copyright certificates

10  listing third parties as authors of musical works were insufficient to establish ownership of the

11  copyrights by the plaintiff record companies.  The court held that it was the record companies'

12  burden to produce the chain of title from the listed author to themselves to demonstrate ownership of

13  the copyrights.  *Id.*; *see also Motta*, 768 F.2d at 483-84 (holding that it was plaintiff's burden to

14  demonstrate that he was a beneficial owner of copyright where he was not the author of the work;

15  noting plaintiff "must establish a proprietary right through the chain of title in order to support a

16  valid claim to the copyright"); *accord Huthwaite, Inc. v. Sunrise Assisted Living, Inc.*, 261 F. Supp.

17  2d 502, 510-11 (E.D. Va. 2003); *Tang v. Hwang*, 799 F. Supp. 499, 503-04 (E.D. Pa. 1992); *see also*

18  *Nimmer*, § 12.11[C] (noting that "[o]nce plaintiff satisfies his burden (by submitting the certificate

19  that he himself filed, or proving his chain of title from the previous registrant), the burden shifts to

20  the defendant to establish the invalidity of plaintiff's title from the author").  Here, Plaintiff offers no

21  evidence to prove its chain of title in these images.

22        In sum, the court concludes that Plaintiff has failed to satisfy its burden to produce

23  significant probative evidence supporting the existence of a genuine issue of material fact as to

24

25

26

27

28

United States District Court

For the Northern District of California

1   Plaintiff's ownership of the copyrights in images (d), (j), and (mm).[8]  Accordingly, summary

2   judgment on Plaintiff's infringement claims as to those three images is granted.

3        The court also finds that summary judgment is appropriate as to the remaining two images in

4   this category, (ll) and (v), both of which are registered in third parties' names.  Both images were

5   published after 1978, and therefore the 1976 Act applies.  The *Abend* rule does not apply to confer a

6   beneficial interest in the copyrights to Plaintiff, because the holding of those cases is limited to

7   works first published prior to 1978.  *See Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 886 (9th Cir.

8   2005) (noting that the 1976 Act eliminated the doctrine of indivisibility); *see also* 17 U.S.C. §

9   201(d)(2) (replacing doctrine of indivisibility by providing that "[a]ny of the exclusive rights

10  comprised in a copyright . . . may be transferred . . . and owned separately").[9]  Plaintiff has not

11  produced significant probative evidence to establish a genuine issue of material fact as to its

12  ownership of these images, such as agreements between Marshall and the registrants, or assignments

13  of copyrights from those entities to Marshall (or Plaintiff).  Accordingly, the court grants summary

14  judgment on Plaintiff's infringement claims based upon images (ll) and (v).

15       **2.     Images  Published Prior to 1978 Without Copyright Notice in Marshall's
                    Name**
16

17       Next, Defendants argue that three images – (a), (x), and (aa) – were published decades earlier

18  than alleged by Plaintiff in the TAC, and without copyright notice in Marshall's name as required by

19  the 1909 Act.  Therefore, Defendants argue, Marshall either does not own the copyrights in the

20  works or they have fallen irretrievably into the public domain.  Under either circumstance, Plaintiff

21  would lack standing to sue for infringement.

22       Plaintiff alleges that the three images are protected by the copyright registration for *Not Fade*

23  *Away*, the 1997 book in which they appear.  (TAC ¶ 7; RJN Ex. C.)  However, judicially-noticeable

---

24  [8] As the court finds that Plaintiff has not met the first prong of the *Abend* rule, it does not reach
    the question of whether Plaintiff has satisfied the second prong – namely, that the publishers bought

25  limited publication rights under circumstances which show that Marshall had no intention to donate his
    work to the public.  Further, given that the court concludes that Plaintiff has not met its burden as to

26  ownership of the copyrights, it need not reach Defendants' argument that registrations in other parties'
    names do not satisfy the requirements of 17 U.S.C. § 411(a).

27

28  [9] Even if the court could consider *Abend*, for the same reasons set forth above, Plaintiff has not
    met its evidentiary burden to establish that the *Abend* rule should apply to these two images.

United States District Court

For the Northern District of California

facts show that these images were published decades before *Not Fade Away*, in 1970, 1972, and 1975, respectively. (RJN III(D); III(F); III(C), Ex. U.) Two of the images, (a) and (x), were published on record album covers without a copyright notice in Marshall's name. (RJN III(D), III(F).) The albums did, however, contain copyright notices in the record companies' names. The third, (aa), appeared in a February 1975 issue of *Rolling Stone* magazine without a copyright notice in Marshall's name.[10] (RJN III(C), Ex. U.) That magazine also contained a copyright notice in the magazine publisher's name. Because the images were published before 1978, the provisions of the 1909 Copyright Act govern to determine ownership of the copyrights.

With respect to image (aa), which appeared in the 1975 issue of *Rolling Stone*, Plaintiff has not established that the *Abend* rule applies. Plaintiff offers the same minimal evidentiary support for application of the *Abend* rule as was discussed above; namely, possession of the negatives, and after-the-fact licensing practices. (Davis Decl. ¶ 7.) For the reasons previously set forth, this evidence is insufficient to support the application of the *Abend* rule. Plaintiff has thus failed to satisfy its burden to produce significant probative evidence that establishes a genuine issue of material fact as to its ownership of the copyright in this image.[11]

The court next turns to the two images published on album covers with copyright notice in the record companies' names only. Under the 1909 Act, copyright was secured through proper notice accompanying original publication of a work. It is undisputed that these images appeared on record album covers without copyright notices in Marshall's name. Defendants argue that the works thus fell into the public domain, citing *Shea v. Fantasy Inc.*, No. C 02-02644 RS, 2003 WL 881006, at *3 (N.D. Cal. Feb. 27, 2003). In that case, the court considered whether a 1966 photograph that was published on an album cover in 1971 had entered the public domain. The photograph appeared

---

[10] Unlike the three images discussed above that also were published in magazines before 1978 ((d), (j), and (mm)), neither party submitted a third party copyright registration for this image.

[11] The court expresses no opinion as to whether this image, or any other image at issue in this motion, has fallen into the public domain. There may well be factual scenarios under which the images did not enter the public domain. For example, if Marshall created the images that appeared in magazines as works for hire, then the magazine publishers would have owned the legal copyrights in the images. The magazines included proper copyright notice upon publication as required by the 1909 Act, which would have prevented the images from becoming part of the public domain.

United States District Court

For the Northern District of California

on the album cover with the photographer's consent, but without credit to the photographer and without a copyright notice. The court concluded that because the artist had failed to comply with the 1909 Act's notice formalities, he "forfeited his copyright," and the work had fallen into the public domain. 2003 WL 881006, at *3.

Plaintiff distinguishes *Shea* on the grounds that the photograph in that case was published without any notice at all, and argues that the *Abend* rule compels the result that the record companies' notices suffice to protect the copyrights in Marshall's images, and to confer an interest in the copyrights on Plaintiff. Defendants make a number of arguments that the *Abend* rule should not be extended beyond the field of magazine publishing, none of which the court finds persuasive. The doctrine of indivisibility results in an identical unintended injustice for individual works contained on a record album (e.g., photographs, artwork, liner notes and other text), as it does for individual works contained in a magazine. There is no logical reason to refuse to apply the *Abend* rule to a record album. Indeed, courts have applied the rule beyond the context of magazine publishing. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 638 n.30 (2d Cir. 2004) (applying *Goodis* to videotape of dance performance); *Neva*, 743 F. Supp. at 1547 (applying *Goodis* to Bible narration recordings). However, as with the images discussed above, Plaintiff's evidence is insufficient to establish the requirements for application of the *Abend* rule. Plaintiff has thus failed to satisfy its burden to produce significant probative evidence that establishes a genuine issue of material fact as to its ownership of the copyrights in these images.

### 3.   Images in *Not Fade Away* and *Proof*

Plaintiff claims that it owns valid copyrights for thirteen individual photographs that were published in the 1997 book *Not Fade Away*, and for eleven photographs that appeared in *Proof*, published in 2004.[12] The books' publishers obtained copyright registrations in Marshall's name for

---

[12] The thirteen images in *Not Fade Away* are (a), (b), (e), (l), (r), (t), (u), (x), (y), (z), (aa), (ee), and (gg) (collectively, the "*Not Fade Away* images"). (Defs.' Mot. 7; TAC ¶ 7.) Images (a), (x), and (aa) overlap with the first category of images at issue in this motion, images for which registrations are in third party names. The eleven images in *Proof* are (c), (g), (h), (o), (p), (q), (s), (w), (ff), (hh), and (ii) (collectively, the "*Proof*" images). (Defs.' Mot. 8; TAC ¶ 7.)

United States District Court

For the Northern District of California

1   *Not Fade Away* in 2004 and for *Proof* in 2005.  (RJN Exs. C, D.)  Defendants argue that Plaintiff

2   cannot assert infringement of each of the photographs because Plaintiff's copyright registrations for

3   the books do not extend to the individual photographs contained therein.

4        Plaintiff argues that the books are compilations[13], and that because Marshall owns the

5   copyrights for the individual images in the books, the registrations for *Not Fade Away* and *Proof*

6   satisfy the registration requirements for the individual images.  Plaintiff cites cases which hold that

7   where the author of a compilation owns the copyrights in the preexisting works, "registration of the

8   collective work is sufficient to permit an infringement action of the constituent part."  *Xoom, Inc. v.*

9   *Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003), *abrogated in part on other grounds by Reed*

10  *Elsevier*, 559 U.S. 154; *accord Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 539 (3d Cir. 1986);

11  *see also Morris*, 259 F.3d at 71 (holding that "[u]nless the copyright owner of a collective work also

12  owns all the rights in a constituent part, a collective work registration will not extend to the

13  constituent part").

14        Plaintiff is precluded from making such an argument.  Plaintiff asserted through its

15  discovery responses that the books are *not* compilations.  Therefore, any benefit of the rule

16  permitting a compilation's registration to flow to its constituent parts does not apply here.

17  Specifically, in response to requests for admission, Plaintiff unequivocally denied that *Not Fade*

18  *Away* and *Proof* were compilations or collective works, as defined by 17 U.S.C. § 101.  (Decl. of

19  Winter, Ex. H at 4, 5.)  Plaintiff cannot deny that the works are compilations in discovery, and then

20  attempt to take the opposite position for purposes of this motion, particularly where the registrations

21  it seeks to rely on do not themselves register the books as compilations.[14]  Therefore, Plaintiff's *Not*

22

23        [13] Under the 1976 Act, a compilation is "a work formed by the collection and assembling of

24  preexisting materials or of data that are selected, coordinated, or arranged in such a way that the
    resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  "The term

25  'compilation' includes collective works."  *Id.*

26        [14] The *Not Fade Away* registration does not purport to register the book as a compilation; it
    merely states the nature of Marshall's authorship as "author of entire text and compilation of

27  photographs."  (RJN Ex. C.)  The section marked "Derivative Work or Compilation" is blank.
    Similarly, the *Proof* registration does not purport to register the book as a compilation.  Although the

28  "Nature of this Work" is identified as "photographs," the section marked "Derivative Work or
    Compilation" is blank.  (RJN Ex. D.)

**United States District Court**
For the Northern District of California

1   *Fade Away* and *Proof* registrations, although valid for registering the books themselves, did not

2   register the individual photographs contained in the books.  At oral argument, Plaintiff conceded that

3   the *Not Fade Away* and *Proof* registrations are the only registrations in Marshall's name that

4   purportedly cover the 24 individual images that appear in those books.  As a result, none of those

5   images are properly registered under the 1976 Act.  Without such registration, Plaintiff cannot bring

6   a "civil action for infringement of copyright[s]" as to those 24 images.  17 U.S.C. § 411(a).

7   Accordingly, the court grants summary judgment as to those images.

8           **C.        Copyright Misuse and Unclean Hands Defenses**

9           Finally, Defendants seek summary judgment of its affirmative defenses of copyright misuse

10  and unclean hands.  Copyright misuse, which is a defense to copyright infringement, precludes the

11  enforcement of a copyright during the period of misuse.  *See Practice Mgmt. Info. Corp. v. Amer.*

12  *Med. Ass'n*, 121 F.3d 516, 520 (9th Cir. 1997).  The copyright misuse doctrine "forbids the use of

13  the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright]

14  Office and which is contrary to public policy to grant."  *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d

15  1079, 1090 (9th Cir. 2005) (citation omitted; brackets in original).  "The misuse defense prevents

16  copyright holders from leveraging their limited monopoly to allow them control of areas outside the

17  monopoly."  *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  An action "will

18  be dismissed under the theory of unclean hands if [a] defendant establishes that [the] plaintiff's

19  evidence was false and that plaintiff was involved in a scheme to defraud the public."  *Supermarket*

20  *of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986).

21          Defendants argue that Plaintiff's conduct in this case – repeatedly amending the pleadings,

22  failing to investigate the validity of its copyrights, and attempting to register previously published

23  works as unpublished – compel the conclusion that it has engaged in copyright misuse.  Defendants

24  assert that Plaintiff's conduct is "strikingly similar" to the conduct at issue in *qad. inc. v. ALN*

25  *Assocs., Inc.*, 770 F. Supp. 1261 (N.D. Ill. 1991), in which the court granted summary judgment on a

26  copyright infringement claim on the basis of copyright misuse and unclean hands.  In *qad*, in

27  testimony provided during a hearing on plaintiff's motion for preliminary injunction, plaintiff's

28  witnesses falsely claimed the software at issue was a completely original work.  The court issued the

injunction, but later concluded that the plaintiff had copied much of the elements of its program

**United States District Court**
For the Northern District of California

from another predecessor software program. *Id.* at 1263. The plaintiff did not disclose that the program was based upon or incorporated any of the earlier software. *Id.* The court held that the plaintiff's copying and use of the material to gain an injunction was central to the resolution of the summary judgment motion. *Id.* at 1265. In subsequent proceedings, the district court clarified that the plaintiff's "copyright misuse was 'egregious' and that it involved 'deception [that] has misled this Court into imposing unwarranted harm on [the defendant]," and that the plaintiff had acted in bad faith in obtaining the preliminary injunction. *qad. inc. v. ALN Assocs., Inc.*, 781 F. Supp. 561, 562-63 (N.D. Ill. 1992) (first brackets in original).

Here, while it appears that Plaintiff may not have thoroughly investigated its copyright ownership claims prior to filing suit, its conduct in no way rises to that described in *qad.* There is no evidence that Plaintiff acted improperly to gain a competitive advantage with respect to the copyrights at issue, nor is there evidence of fraud or misconduct. *See Supermarket of Homes*, 786 F.2d at 1408. Summary judgment on Defendants' affirmative defenses of copyright misuse and unclean hands is accordingly denied.

## V. Conclusion

For the foregoing reasons, summary judgment is granted in favor of Defendants as to Plaintiff's copyright infringement claim regarding the following images in suit: (a), (b), (c), (d), (e), (g), (h), (j), (l), (o), (p), (q), (r), (s), (t), (u), (v), (w), (x), (y), (z), (aa), (ee), (ff), (gg), (hh), (ii), (ll), and (mm). In all other respects Defendants' motion is denied.

IT IS SO ORDERED.

Dated: June 3, 2013



_____
DONNA M. RYU
United States Magistrate Judge